UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
CANDY BELL,                             )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    Civil Action
                                        )    No. 05-11485 RWZ
JOHN E. POTTER, in his official         )
capacity as POSTMASTER GENERAL          )
OF THE UNITED STATES                    )
POSTAL SERVICE,                         )
                                        )
            Defendant.                  )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, John E. Potter, Postmaster General of the United States Postal Service, by and through his Attorney Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this Memorandum in support of his Motion for Summary Judgment. For the reasons set forth below, the undisputed material facts show that the defendant is entitled to judgment in his favor.

## I. Introduction

The plaintiff, Candy Bell, alleges that she was subject to discrimination based on race, color, and gender, retaliation and a hostile work environment at the time she worked at the Northwest Processing and Distribution Center ("NWB") in Waltham, Massachusetts. In this present action, the defendants are

entitled to summary judgment because the plaintiff fails to demonstrate the existence of a genuine issue of material fact.

## II.  <u>Local Rule 56.1 Statement of the Facts</u>

1.  In 1997, plaintiff filed an Office of Workers' Compensation Programs ("OWCP") claim which was accepted for a work related psychological condition allegedly resulting from ongoing coworker harassment. (Ex. 1). Plaintiff had previously engaged in EEO administrative proceedings and filed a civil suit for the alleged harassment.  (Ex. 2 Pl's Jan. 11, 2000 Compl.).

2.  On March 31, 2000, the Postal Service initiated an ongoing effort to return plaintiff to work. (Ex. 3 correspondence dated March 31, May 18, May 25, June 9, and July 17, 2000).

3.  On December 12, 2000, the Postal Service offered plaintiff an assignment at the NWB consisting of temporary limited duty six hour work days to continue for four-to-six weeks at which point she was to return to full-time eight hour duty.  (Ex. 4).  Plaintiff accepted this position on December 28, 2000.  (Ex. 5).

4.  On January 13, 2001, the plaintiff began working at the NWB.  (Ex. 6).

5.  On February 23, 2001, plaintiff contacted the Agency's EEO office to initiate administrative EEO proceedings.

2

(Ex. 7).

6.    On or about February 27, 2001, plaintiff submitted a
      letter from her therapist stating that plaintiff should
      not work more than six hours per day.  (Ex. 8).

7.    On or about April 10, 2001, Walter F. McCoy, Human
      Resource Specialist of the Northeast Area Injury
      Compensation Office sent a letter to the Office of
      Workers Compensation Programs stating that the Postal
      Service wished to return Candy Bell to full-time work
      duties and requesting a fitness for duty examination to
      determine the feasibility of a return to full-time
      work.  (Ex. 9).

8.    On June 8, 2001, plaintiff filed an administrative EEO
      complaint.  (Ex. 10).

9.    On June 20, 2001, management requested that the
      plaintiff undergo a Fitness for Duty Examination to
      determine if she was capable of working in a group
      environment.  (Ex. 11)

10.   On July 31, 2001, plaintiff submitted an EEO
      complaint/affidavit statement of alleged harassment in
      which she lists the following seven specific incidents
      of harassment.  (Ex. 12 Pl's EEO Aff.)

      A.    On 1/13/01, "charley yells out good job gay and AJ
            replies ya well it's her night off so she gets to

3

sleep tonight."  <u>Id.</u>

B.   On 3/12/01, "genny yells out ya she must love it in jail, Charley says who the dike."  <u>Id.</u>

C.   On 3/25/01, "guy in automation yells in my direction with noone else in the unit hay gay. 4:30 AM as I was leaving I asked him what his name was he told me Mike but ask why did I want to know, did he do something disrespectful to me.  I said you know you did.  <u>Id.</u>

D.   On 3/28/01, "Patrick Barry says to genny lets give the gay an earful.  2:35am theresa ask Steve to quiet Ginny down because she was yelling comments about why are some women gay and varies positions she likes in bed Theresa was so upset she said she was going straight to managamero that morning to complain."  <u>Id.</u>

E.   On 4/2/01, "Theresa complained to management about the guys in automation cheering noises all night. That it was unprofessional and disrupted; and not a good working environment."  <u>Id.</u>

F.   On 4/4/01, "Patrick Barry says to gean Marie your gay Ginney.  Ginney say oh no pat, I am not gay. Pat says then well there is allot of gays in here."  <u>Id.</u>

    G.    On 6/6/01, "genny as walking to the beak area (with Theresa and aj) yells candy is a fucken gay. 1:35am after break I ask dick matthews if I can talk to him and ginney.  He tells me no tell me what's going on after he tacks to ginney for about ten minutes.  He tells me if I am sure I hear that comment, and Ginny never said anything like that before."  <u>Id.</u>

11.   On December 13, 2001, the plaintiff was offered a new assignment at the Dorchester Mail Center.  (Ex. 13).

12.   Some three and a half years later on April 21, 2005, the plaintiff's EEO complaint was dismissed by the Agency for failure to state a *prima facie* case of harassment based on race, gender, or reprisal, and because the incidents did not rise to the level of a hostile environment.  (Ex. 14).

13.   On July 14, 2005, the plaintiff filed the instant civil action alleging three counts: (I) discrimination on account of race, color, and gender, (II) retaliation for the plaintiff's past EEO complaint, and (III) hostile work environment.  (Ex. 15 Pl's Compl. Jul. 14, 2005).

14.   On October 10, 2006, plaintiff was deposed in conjunction with the instant civil action.  Pl's Dep.

Oct. 10, 2006 (relevant portions attached hereto as Ex. 16).

## III.    Argument

### A.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of a factual dispute is not enough to thwart summary judgment. See Navarro v. Pfizer Corp., 261 F.3d 90, 93 (1st Cir. 2001). "Even in employment discrimination cases where elusive concepts such as motive and intent are at issue," summary judgment is appropriate if the plaintiff bases her claim "merely upon conclusory allegations, improbable inferences, and unsupported speculation." Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). See also Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 54-55 (1st Cir. 2006) (stating that "summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation"). The facts at issue must be both "material" and the resulting dispute must be

6

"genuine."  <u>Navarro</u>, 261 F.3d at 93.

The moving party bears the burden of demonstrating the nonmoving party's lack of evidence to support its case.  <u>See</u> <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280 (1st Cir. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  When determining if the parties have met their respective burdens, "the facts are viewed in the light most favorable to the nonmovant, and all reasonable inferences are drawn in the nonmovant's favor."  <u>Ingram v. Brink's, Inc.</u>, 414 F.3d 222, 228 (1st Cir. 2005) (internal parentheticals omitted).  The ultimate burden of proving unlawful discrimination at all times rests with the plaintiff.  <u>Id.</u>

The plaintiff, Candy Bell, is unable to establish a genuine existence of material facts.  Her allegations are unsupported and require improbable inferences.  Plaintiff thus cannot meet her required burden of establishing a *prima facie* case of harassment or retaliation.  Therefore, the defendants are entitled to summary judgment.

B.  **<u>The Plaintiff Fails to Establish that She was Subject to a Hostile Work Environment on Account of Discriminatory Harassment.</u>**

The plaintiff's hostile work environment claim and her discriminatory harassment claim based on race, color, and gender are separated into Count I and Count III in her complaint. Because a hostile work environment claim encompasses the

7

principles of a discriminatory harassment claim, for the purposes
of this motion, the two counts will be addressed together.

To establish a *prima facie* claim of discriminatory
harassment, the plaintiff bears the burden of demonstrating that
"the bad acts, taken in the aggregate, are sufficiently severe or
pervasive to constitute actionable harassment." <u>Noviello v. City
of Boston</u>, 398 F.3d 76, 93 (1st Cir. 2005). Plaintiff must prove
that the harassment was based on her race and gender. <u>Douglas v.
J.C. Penney Co., Inc.</u>, 474 F.3d 10, 15 (1st Cir. 2007) (citing
<u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 728 (1st Cir.
2001)). In order to prove hostile work environment, the
plaintiff must establish that she is subject to harassment so
severe and pervasive that it "materially altered the conditions
of her employment." <u>Noviello</u>, 398 F.3d at 92. Furthermore, the
harassment must create an environment "objectively and
subjectively offensive, one that a reasonable person would find
hostile or abusive." <u>Faragher v. City of Boca Raton</u>, 524 U.S.
775, 787 (1998).

Courts must look at the totality of circumstances
surrounding the alleged harassment when determining whether a
reasonable person would find the conduct complained of to be
hostile or abusive. <u>See</u> <u>Noviello</u>, 398 F.3d at 92. Specifically,
the "frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere

8

offensive utterance; and whether it unreasonably interferes with an employee's work performance" are factors that guide this inquiry. <u>Id.</u> (citing <u>Faragher</u>, 524 U.S. at 788). Plaintiff does not meet her *prima facie* burden because she is unable to demonstrate that the alleged harassment was based on race or that the alleged gender based harassment was so severe or pervasive that it materially altered the conditions of her employment.

**1.    Plaintiff does not demonstrate that the alleged harassment was based on her race or color**

In order to assert a claim of race based harassment, plaintiff must prove that the harassment was in fact based on her race. <u>See Douglas v. J.C. Penney Co., Inc.</u>, 474 F.3d 10, 15 (1st Cir. 2007) (citing <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 728 (1st Cir. 2001)). In Plaintiff's civil complaint, she refers to "racial and gender-based slurs" and "derogatory comments about plaintiff's physical appearance, her race, gender and sexually oriented commentary". (Ex. 15 Pl.'s Compl. ¶¶ 11, 13). In her EEO affidavit, the plaintiff lists seven specific incidents as evidence supporting her claim of discrimination. (Ex. 12). None of the incidents of harassment cited by plaintiff reference or address her race or color. Furthermore, plaintiff could not recollect any specific incidents where coworkers made comments based on her race or color, stating only that she felt "that things that were done to me were because of my race." (Ex. 16 Pl.'s Dep., 63:18-19). Plaintiff is unable to support this

9

inference with reliable evidence and thus does not meet her burden of demonstrating that the alleged harassment was based on her race or color.

> **2. Plaintiff does not demonstrate that the alleged gender based harassment was frequent or severe**

Title VII is not intended to be a "general civility code" and thus the "standards for judging hostility" must be "sufficiently demanding." Faragher, 524 U.S. at 788. As the First Circuit has stated, "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello, 398 F.3d at 92. The harassment must be frequent, severe, and more than inappropriate office comments. See, e.g., Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (finding that a single incident must be very extreme and usually involve a physical contact if it is to create a hostile working environment); White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 260-261 (1st Cir. 2000) (finding that a hostile work environment existed where the employee was subject to "disgusting" statements and comments on a daily basis).

Looking at the totality of circumstances surrounding the alleged harassment, a reasonable person would not find the alleged conduct so severe as to constitute a hostile or abusive work environment. Although plaintiff alleges that gender based comments were made, only once was the plaintiff's name used in an alleged comment. (See Ex. 12). There is no evidence that any of

the other six comments plaintiff cites in her EEO affidavit were actually directed at the plaintiff.  Id.  Furthermore, the seven possibly unrelated comments are the only comments plaintiff could recall with any particularity.  (See Ex. 16 Pl.'s Dep., 65:12-67:15).  Thus, Plaintiff can cite only one instance that a coworker directed a gender based comment at her.  Furthermore, plaintiff has not shown that the comments made by her coworkers were more than isolated offensive utterances.  Seven alleged incidents of nonthreatening workplace comments made over the course of months of employment do not rise to the level of abusive conduct resulting in a hostile work environment.  See Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990) (expressing doubt that five sexual comments in a four to five week period would be sufficient to create a hostile work environment).

### 3.    The harassment alleged did not materially alter the conditions of plaintiff's employment

In order to prove a hostile work environment claim, plaintiff must show that the alleged harassment materially altered the conditions of her employment.  Faragher, 524 U.S. at 786.  Plaintiff cannot show that the alleged harassment materially altered the conditions of her employment.  Plaintiff was not discharged, demoted, denied a promotion, or had any other relevant tangible actions taken against her.

When harassment does not result in a tangible change in the

11

conditions of employment, the plaintiff must prove that the harassment is so severe or pervasive that the harassment in essence alters the conditions of employment. <u>Fontánez-Núñez</u>, 447 F.3d 50 at 56. A reasonable person would not find the conduct plaintiff complains of rises to the level of hostile, offensive, or abusive, conduct capable of materially altering the conditions of employment. <u>See</u> <u>Id.</u> at 57 (stating "while the vulgar language was inappropriate to the workplace and completely unprofessional, mere offensive utterances that [do] not reasonably interfere with the employee's performance do not amount to harassment that in essence alter[s] the terms or conditions of . . . employment"); <u>Faragher</u>, 524 U.S. at 788. (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotations omitted). The unprofessional conduct alleged by plaintiff amounts to no more than isolated teasing and offensive utterances. Here, this is especially so because the plaintiff offers no proof showing that the alleged coworker comments were even directed at her. The plaintiff therefore fails to establish a *prima facie* case of discriminatory harassment and hostile work environment.

C. <u>**The Plaintiff is Unable to Show that She was Subject to Retaliation on Account of Her Past EEO Involvement**</u>

When there is no direct evidence of retaliation, as in this case, the McDonnell Douglas burden shifting framework is utilized

to determine whether the defendant is entitled to summary judgment.  <u>See</u> <u>Bishop v. Bell Atlantic Corp.</u>, 299 F.3d 53, 58 (1st Cir. 2002).  First, the plaintiff must establish a *prima facie* case.  <u>Id.</u>  To establish her *prima facie* case of retaliation under Title VII, plaintiff  must show that "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action after or contemporaneous with such activity; and (3) there existed a causal link between the protected activity and the adverse job action."  <u>Benoit</u>, 331 F.3d at 175; <u>see</u> <u>Dressler v. Daniel</u>, 315 F.3d 75, 78 (1st Cir. 2003).  If the plaintiff meets this showing, the burden then shifts to the defendant to articulate legitimate non-discriminatory reasons for the alleged adverse employment action.  <u>Bishop</u>, 299 F.3d at 58. Finally, the plaintiff must show that the defendant's reasons proffered were pretext.  <u>Id.</u>  Although plaintiff can fulfill the first prong of her *prima facie* case, she is unable to show that she suffered an adverse employment action or that there was a causal link between the protected activity and the alleged discrimination.  The defendants are thus entitled to summary judgment as to the plaintiff's claim of retaliation for failure to establish a *prima facie* case.

### 1.    Plaintiff did not suffer an adverse employment action

It is not disputed that the plaintiff's present and past EEO involvement amount to protected activity.  However, the plaintiff

fails to provide sufficient evidence that she suffered any kind
of adverse employment action as a result.  See Blockel v. J.C.
Penney Co., Inc., 337 F.3d 17, 26-27 (1st Cir. 2003) (stating
that "[t]o succeed in a retaliation claim, a plaintiff must first
establish the basic fact that he was subject to an adverse
employment action because of his protected activity") (internal
quotations omitted).  In doing so, the "plaintiff must show that
a reasonable employee would have found the challenged action
materially adverse." Burlington N. and Sante Fe Ry. Co., 126 S.
Ct. 2406, 2415 (2006).  In this context, materially adverse means
that the action "must be harmful to the point that [it] could
well dissuade a reasonable worker from making or supporting a
charge of discrimination." Id. at 2409. Additionally, the
alleged retaliatory act must produce "a significant, not trivial
harm." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir.
2006) (citing Burlington, 126 S. Ct. at 2415).  "Normally[,]
petty slights, minor annoyances, and simple lack of good manners
will not create such deterrence." Burlington, 126 S. Ct. at
2415.

     Plaintiff contends that NWB management's request that
plaintiff undergo a fitness for duty examination constitutes an
adverse employment action.  The plaintiff, however, provides no
evidence to support her claim that this amounts to an adverse
employment action that is so harmful it would deter a reasonable

employee from making or maintaining a charge of discrimination. Furthermore, plaintiff provides no evidence of retaliatory intent on behalf of the NWB or that she was harmed by the examination request. See Carmona-Rivera, 464 F.3d at 20 (finding lack of retaliation where the alleged action inconvenienced plaintiff but caused no real harm and where plaintiff offered no evidence of retaliatory intent). At most, the fitness for duty exam amounts to an inconvenience which could cause trivial, not lasting or significant, harm.

Even if requiring a fitness for duty exam was considered an adverse employment action, defendant had a legitimate non-discriminatory reason for requesting the exam. While plaintiff did not file her complaint until June 8, 2001, the OWCP first began discussing the need for a fitness for duty exam in order to evaluate plaintiff's work restriction status and continued eligibility for workers compensation payments in April 2001. (Ex. 9). In accordance with plaintiff's job offer and acceptance, the Postal Service wished to return plaintiff to full-time work duties. Id. The Postal Service made a management decision to assess plaintiff's fitness for duty in order to resolve the issue of whether plaintiff should remain on limited duty status and how best to meet her work condition needs. Id. Thus, plaintiff's retaliation claim must also fail because the Postal Service had a legitimate reason for requesting the fitness

15

for duty examination.

**2.  Plaintiff has not demonstrated a causal connection to her protected activities**

Lastly, plaintiff cannot show a causal connection between her past and present EEO activities and the alleged discriminatory events.  Temporal proximity between the protected activity and the retaliatory act can create an inference of causation.  <u>Pomales</u>, 447 F.3d at 85 (citing <u>Wyatt v. Boston</u>, 35 F.3d 13, 16 (1st Cir.1994).  In order to establish a causal connection based on temporal proximity, the proximity must be very close.  <u>See</u> <u>Calero-Cerezo v. U.S. Dept. Of Justice</u>, 355 F.3d 6, 25 (1st Cir. 2004) (internal quotations omitted) (stating that three and four months periods have been insufficient to establish a causal link based on temporal proximity).

Here, the time period between plaintiff's past EEO complaint and the fitness for duty examination request is clearly too far in time to support a finding of temporal proximity.  Plaintiff initiated her previous complaint in 1997.  (Ex. 2).  The fitness for duty examination was requested on June 20, 2001, four years later.  (Ex. 11).  Such a long time period does not support finding a causal connection.  <u>See</u> <u>Moron-Barradas v. Department of Educ. of Com. of Puerto Rico</u>, 2007 WL 1501738, 7 (1st Cir. 2007) (finding an eight month gap between the alleged events too far in time to establish temporal proximity); <u>Benoit</u>, 331 F.3d at 175 (finding a one year gap too far in time to establish temporal

16

proximity).

While the time period between plaintiff's present EEO complaint, filed on June 8, 2001, and the fitness for duty exam, requested on June 20, 2001, may appear temporally proximate, this does not necessarily support finding a causal connection.  See Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 85 (1st Cir. 2005) (stating that "chronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation." (internal citations omitted).  Here the larger picture undermines finding a causal connection.  Management first began discussing the need for a fitness for duty exam in April 2001, nearly two-months after plaintiff first contacted the EEO and just over two-months before plaintiff filed her EEO complaint.  (See Ex. 7, 9, & 12); Pomales, 447 F.3d at n.3 (noting that two-months has been found too long to establish a causal connection).

Although management ultimately requested the exam shortly after plaintiff filed her complaint, making the request appear temporally proximate, this, standing alone, does not support a claim of retaliation.  See Ramirez Rodriguez, 425 F.3d at 85 (finding the fact that management had concerns about the employee prior to his filing his complaint but terminated the employee "after he filed his ADU claim . . . [did] not, standing alone, establish a causal connection between the . . . complaint and the

17

termination"). Thus, the mere fact that the examination request appears temporally proximate to plaintiff's EEO complaint should not, standing alone, support finding a causal connection.

Plaintiff has presented no other evidence supporting her claim of retaliatory intent, nor has plaintiff presented any evidence that she was harmed by the fitness for duty exam. Furthermore, management presented a valid non-discriminatory reason for requesting the exam. Therefore, the defendants are entitled to summary judgment because the plaintiff fails to establish the requisite causal connection.

## IV.  **Conclusion**

Based on the arguments and authorities cited herein, the defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

JOHN E. POTTER, POSTMASTER GENERAL
OF THE UNITED STATES POSTAL
SERVICE,

By his attorneys,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02109
(617) 748-3100

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 28, 2007.

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney

EXHIBIT 1

 

**STATEMENT OF ACCEPTED FACTS**
**Claimant: Candy Bell**
**File Number: 010345722**

Claimant, Candy Bell, date of birth 04/30/1965, employed as a Mail Clerk by the US
Postal Service, Boston, Massachusetts from July 30, 1988 to August 18, 1997.

In the spring of 1997, claimant filed claim for workers' compensation benefits on account
of stress and depression caused by co-worker harassment and management's
unwillingness or inability to address the problem. The claimant began to lose time from
work on a regular basis. She stopped work completely on March 24, 1997 and has not
returned to date.

On March 25, 1997, claimant presented to the Faulkner Hospital emergency room
complaining of increased depression and declining ability to function. Claimant was
admitted to the Carney Hospital on 03/26/97 and discharged 03/28/97. Claimant began
treatment at The Arbour Hospital on 03/31/97 and participated in weekly therapy sessions
with Susan Carman, RN and was also seen in psychopharmacology consult with Donald
Barker, M.D. On 07/14/97 and 07/17/97 claimant underwent psychological testing
performed by Dr. Stuart Carter including an interview, Rorschach, TAT, Complex Figure
Designs Forms A and B, Human Figure Drawings, and MMPI-II. Claimant was admitted
to the Arbour Hospital on 07/23/97 on a voluntary basis. She was discharged on
07/28/97.

Claimant attributed her condition to several events occurring in the workplace. Workers'
compensation law does not apply to each and every illness that is somehow related to
one's employment. Therefore, the Office of Workers' Compensation Programs has
differentiated between those working conditions deemed compensable factors of
employment and those not deemed factors of employment.

**I. Incidents which occurred that are considered factors of employment:**

- Being the subject of rude comments and gestures by co-workers' regarding her weight
and alleged body odor. Co-workers holding their nose, sniffing the air and making
similar type of gestures in claimant's presence. As a result of her co-workers behavior
claimant began to wash her underarms as much as every two hours at work, she
frequently changed deodorant and soap brands, and took other steps to ensure personal
hygiene. The co-worker comments continued and she began to believe that strangers on
the street were also making gestures to indicate there was a hygiene problem. In 1994,
claimant sought medical attention from her primary care physician, Jerline S. Dixon,
M.D., for what she described as persistently foul body odor. Dr. Dixon assured claimant
that she had absolutely no problem with hygiene.
- Co-workers making howling noises and animal sounds whenever the claimant was in
the area.
- Co-workers leaving postcards with pictures of monkeys, hippos, pigs, and obese people
on the letter sorting machine console for claimant to see.



- Claimant having apprised management on at least four occasions of the derogatory comments being made by co-workers and claimant being advised by supervisor to ignore her co-workers. Management's unwillingness or inability to put a stop to the co-workers behavior outlined above.
- In September 1996, someone wrote "where's Candy?" "At a pig feast with our pig face (illegible)" on the desk calendar of a supervisor.
- Claimant being told on several occasions by supervisors to return to work while her white co-workers were allowed to continue talking on their break. Evidence of differential treatment of white and black employees at the facility where claimant worked.

## II. Incidents that occurred which are not considered factors of employment:

- September 22, 1995 letter of warning issued to claimant for failure to be regular in attendance.
- January 18, 1996, claimant was issued a seven day suspension due to irregular attendance.
- June 14, 1996, claimant was issued a fourteen day suspension due to irregular attendance.
- On March 15, 1997, not being notified by management or co-workers that she was being paged because her son was injured at school.
- On March 19, 1997, claimant's referral to the Employee Assistance Program (EAP) by her supervisor and claimant's failure to report to EAP for counseling.
- On March 21, 1997, claimant being issued a letter from her employer to report for a fitness for duty exam on April 2, 1997 and claimant's failure to report as scheduled.
- On May 7, 1997, claimant being issued a letter from her employer stating she was considered AWOL beginning April 26, 1997 and she was to provide medical documentation to support her work absence.
- On May 29, 1997, receipt of a fourteen day suspension for failure to be regular in attendance.
- On August 18, 1997, issuance of a Letter of Removal from the postal service due to failure to be regular in attendance.

## III. Incidents alleged which the office finds did not occur and therefore are not considered compensable factors of employment.

- On December 16, 1994, claimant was allegedly called a "Stinking black bitch" by a male co-worker in front of other white male co-workers.
- In July 1990 and December of 1996, claimant's private vehicle was allegedly vandalized (dents, scratches, hub cap pulled of) by other postal employees.
- Allegedly being told by a co-worker that she would probably be killed or she would find her car torched if someone lost their job if she followed through with her plan to ask postal management/security to keep track of employees who went outside for break. Claimant alleged her co-workers used drugs outside on break and were responsible for the vandalism.

2

- On or about March 24, 1997, claimant was allegedly cheered "Gay, the gay is in" by a co-worker in reference to her misperceived sexual orientation. Alleged gossip by co-workers stating claimant was gay and had been to a gay bar dancing.
- Alleged negative remarks voiced by co-workers and management regarding claimant's sexual orientation.
- Co-workers' allegedly refusing to sit near her and claimant being isolated in the workplace.
- Claimant allegedly called a nigger and a bitch repeatedly by co-workers.
- A co-worker allegedly holding up a picture of an ape asking the question "who does this big, black ape remind you of?"
- On 10/10/96 claimant being notified that she no longer qualified for the FMLA status that she had applied for because of her son.
- Supervisor Driscoll allegedly informing claimant that if he could be a slut he'd simply lie on his back all day and ask people what they wanted.

The Office of Workers' Compensation Programs accepted the condition of dysthymia as a result of incidents considered factors of Federal employment as identified in **Part I** above.

**Non-work related history:** Claimant is a single mother raising an autistic child. Claimant suspected that her nephew was sexually abusing her autistic son. Claimant's son was removed from her home by DSS and placed in residential care on or about October 1996.

**Non-work related conditions:** Morbid obesity, borderline hypertension, hypercholesterolema, cutaneous facial sarcodosis since 1994, history of sexual abuse as a child, sibling (brother) shot to death, history of elicit drug use (Marijuana/Hashish) from 1985 to March 1997, use of Phen Fen for weight loss, drug discontinued sometime around the first week of April, 1997.

Michele R. Elliott
Senior Claims Examiner
05/13/99

# EXHIBIT 2

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Candy M. Bell,                          )
                                        )
        Plaintiff,                      )       CIVIL ACTION NO.
                                        )
vs.                                     )
                                        )
Marvin Runyon,                          )
  in his Official Capacity as           )   00 CV 10054 MLW
  Postmaster General of the             )
  United States of America,             )
                                        )
United States Postal Service,           )
                                        )
        Defendants.                     )

RECEIPT # _19477_
AMOUNT # _150.00_
SUMMONS ISS. _yes_
LOCAL RULE 4.1 _____
WAIVER OF SERV. _____
MCF ISSUED _____
AO 120 OR 121 _NO_
BY DPTY CLK _JR_
DATE _1-11-00_

COMPLAINT AND DEMAND FOR TRIAL BY JURY

Jurisdiction

1)  Jurisdiction is conferred by 28 U.S.C. 1331, as this action
    arises under the laws of the United States. Jurisdiction is
    further conferred by 28 U.S.C. 1343(a)(4) as this action is
    brought to recover damages or to secure equitable or other
    relief under any Act of Congress providing for the
    protection of civil rights.

Parties

2)  The Plaintiff, Candy Bell, is a resident of the Commonwealth
    of Massachusetts, residing in Suffolk County.

3)  The Defendant(s) is the United States Postal Service by and
    through Marvin Runyon acting in his Official Capacity as the
    Postmaster General of the United States of America.

Page 1 of 8

# EXHIBIT 3

INJURY COMPENSATION CONTROL OFFICE
BOSTON MA 02205-9420

**UNITED STATES**
**POSTAL SERVICE**
Date: March *31* , 2000

CERTIFIED:  Z 319 296 058

Ms. Candy Bell
136 Seaver Street, Aptl 28
Boston MA  02121-1544

Re:    Limited Duty Assignment
       Claim No.  01-0345722

Dear Ms. Bell:

With regard to your job-related injury of 3/15/97, medical evidence indicates that you are capable of
returning to work six (6) hours a day in a limited duty capacity, increasing to eight (8) hours per day
in 4-5 weeks.  We are, therefore, offering you duties at PL 431 (Primary Unit), General Mail Facility,
25 Dorchester Avenue, Boston MA 02205 .

This is a Level 5, Step 0, modified distribution clerk  assignment.  The hours of duty will be 2300
to 0500 increasing to eight (8) hours per day in 4-5 weeks, hours will be 2250 to 0700.  Your non-
scheduled days will be  Sunday/Thursday.  Your salary will be S19.00  per hour.

Attached is a description of the duties and physical requirements of the assignment.  These duties
have been tailored to meet your physical needs at this time.  This assignment is effective immediately,
and will continue pending receipt of updated medical documentation every thirty (30) days.

Please indicate your decision by signing the attached assignment form, either accepting or refusing
the offer, and return it in the enclosed self-addressed stamped envelope by  *4/14/00* .  Please be
aware that this offer will remain open and available to you until a final decision is rendered by
OWCP.

Please note that The Federal Employees Compensation Act states  that an employee who refuses a
suitable job offer may have their compensation and medical benefits terminated.

If you have any questions regarding this offer, please contact me at (617) 654-5525.

Sincerely,

*Diana Valentine*

Diana C. Valentine
Human Resources Specialist
Injury Compensation Control Office

Attachment

cc:    Claims Examiner
       SMDO John D. Carroll, Tour I, GMf
       MDO Paul Cheslofska, Tour 1, GMF
       Supervisor William Breen, Tour 1, GMF
       File

 **UNITED STATES**
**POSTAL SERVICE**            INJURY COMPENSATION CONTROL OFFICE
                                      BOSTON MA 02205-9402

Date:    May 18, 2000

Mr. Craig DeMello, Claims Examiner
U. S. Department of Labor
Office of Workers' Compensation Programs
JFK Federal Building, Room E-260
Boston MA 02203-0091

A01- 345722
SENT TO OWCP
5/18/00
ICCO - BOSTON, MA

345722
6/9/00

Re:    Employee        Candy Bell
       Claim #:        01-0345722
       DOI:            3/15/97

Dear Mr. DeMello:

This letter refers to the continuing total disability of Candy Bell.   On 3/31/00 I sent to Ms. Bell a
limited duty job offer which you found suitable.

As of this writing Ms. Bell has not respond to this job offer.   Additionally this office has not received
any communication, either verbal or written, from Ms. Bell.

5 USC 8106 © (2) states that "A partially disabled employee who refuses or neglects to work after
suitable work is offered to, procured by, or secured for him/her is not entitled to compensation".
Therefore, any claimant who refuses an offer of suitable employment (or fails to report for work
when scheduled) is not entitled to any further compensation for wage loss or Scheduled Award.

AQS query indicates Ms. Bell is continuing to received workers compensation benefits (see attached).

Has Ms. Bell submitted additional documentation to justify not accepting the limited duty job offer
sent to her on 3/31/00?   If not, the employing agency requests that compensation benefits be
terminated due to refusal of a suitable job offer.

If Ms. Bell has submitted additional medical documentation to substantiate her continuing to be
totally disabled, please forward a copy to this office.

Please advise.   If I can provide further assistance, please contact me in writing at the address below
or call me at 654-5525.

Sincerely,

Diana Valentine
Human Resources Specialist
Injury Compensation Control Office
U. S. Postal Service
25 Dorchester Avenue
Boston MA 02205-9402

cc:    Walter McCoy, NEA Injury Compensation
       SMDO Arthur V. Connolly, Tour 1, GMF
       MDO Paul Cheslofska, Tour 1, GMF

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
JFK FEDERAL BUILDING  RM E-260
BOSTON  MA  02203
Phone: (617) 565-2137

May 23, 2000

File Number:   010345722
Date of Injury:  03/15/1997
Employee:     Candy Bell

345722
6/4/00

Candy M. Bell
136 Seaver St Apt 27
Roxbury, MA 02121

Dear Ms. Bell:

You were offered a position as a Modified Distribution Clerk with the United States Postal Service which is found by OWCP to be suitable to your work capabilities. The duties and physical limitations of the offered position are described in the attached letter. This position is currently available to you. Upon acceptance of this position, you will be paid compensation based on the difference (if any) between the pay of the offered position and the pay of your position on the date of injury. You will have the opportunity to accept the position with no penalty.

You have 30 days from the date of this letter to either accept the position or provide an explanation of the reasons for refusing it. At the expiration of 30 days, a final decision on this issue will be made. If you fail to accept the position, any explanation or evidence which you provide will be considered prior to determining whether or not your reasons for refusing the job are justified.

5 USC 8106 (c) (2) states that "A partially disabled employee who refuses or neglects to work after suitable work is offered to, procured by, or secured for him is not entitled to compensation." Therefore, any claimant who refuses an offer of suitable employment (or fails to report for work when scheduled) is not entitled to any further compensation for wage loss or Schedule Award.

If you fail to accept the offered position, and fail to demonstrate that the failure is justified, your right to further compensation for which you may apply or to which you may otherwise be entitled, will be jeopardized.

Sincerely,

CRAIG S. DEMELLO
Claims Examiner

US POSTAL SERVICE
BOSTON DISTRICT  GMF RM 3002
INJURY COMP UNIT   560000
25 DORCHESTER AVENUE
BOSTON, MA 02205



**UNITED STATES POSTAL SERVICE**

INJURY COMPENSATION CONTROL OFFICE
BOSTON MA 02205-9402

Date:    June 9, 2000

Mr. Craig DeMello,  Claims Examiner
U. S. Department of Labor
Office of Workers' Compensation Programs
JFK Federal Building, Room E-260
Boston MA  02203-0091

Re:    Employee        Candy Bell
       Claim #:        01-0345722
       DOI:            3/15/97

Dear Mr. DeMello:

On 3/31/00 per your acceptable suitability determination I sent a limited duty job offer to Ms. Bell
(copy attached).  On 5/25/00 you sent her a 30-day letter.   As of this writing Ms. Bell has not
returned the limited duty job offer.

Her return to work capabilities was based on medical evidence (undated) from Christine Caines-
Dodson, M.Ed., Therapist, received in this office on 2/15/00.  The OWCP-5 indicated "it would be
most beneficial for Ms. Bell to return to work in late January 2000.  However the place should not be
the same location as where previously employed".

Her date of injury work site was the Back Bay Unit of the General Mail Facility.

Based on the above referenced medical evidence a job was developed in the Primary Unit of the
General Mail Facility and you deemed it suitable.

On 5/24/00 updated medical evidence was received from Ms. Caines-Dodson indicating ". . . she
cannot work in the GMF on 25 Dorchester Avenue, Boston.  She needs to be placed in another
location with the restrictions noted on reverse side".

It should be noted that the initials after Ms. Caines-Dodson's name are "M.Ed - Therapist".

Please review this medical evidence with the change in restrictions and advise your disposition
relative to whether the initial job offer is valid and in good standing and whether medical evidence
from an M.Ed/Therapist is recognized.  If not,  please advise.

If I can provide further assistance, please contact me in writing at the address below or call me at
654-5525.

Sincerely,

Diana Valentine
Human Resources Specialist
Injury Compensation Control Office
U. S. Postal Service
25 Dorchester Avenue
Boston MA  02205-9402

NORTHEAST AREA
INJURY COMPENSATION OFFICE

**UNITED STATES**
**POSTAL SERVICE**

July 17, 2000

Mr Craig DeMello
Office of Workers' Compensation Programs
United States Department of Labor
Room E-260 JFK Bldg.
Boston Massachusetts 02203-0091

RE:     Ms. Candy Bell
        010345722

Dear Mr DeMello:

This letter is a request for immediate suspension of compensation and the implementation of formal termination of all benefits to claimant Candy Bell.

The United States Postal Service has fulfilled it's responsibility under the FECA by providing a suitable Job Offer to this claimant. On 3/31/00 a Job Offer which you deemed suitable was sent to this claimant from the Boston District Injury Compensation Office. Candy Bell has not responded to this Job Offer. The Injury Compensation Office has received no communication from Ms. Bell. On 5/25/00 you sent a letter to Ms Bell advising her that she had 30 days to either accept the J.O. or provide an explanation of the reasons for refusing it. To date the employing agency has received neither an acceptance nor an explanation. The agency understands that if a claimant refuses a Job Offer that the claims examiner must notify the claimant that she has 15 additional days to accept the Job Offer. However, there is an additional factor in this case. Rehabilitation Counselor Jim Sarno has been assigned to Candy Bell's case. However, he has been unable to provide services to Ms Bell due to her refusal to participate with his vocational rehabilitation efforts. She refuses to even talk to Mr. Sarno. Therefore in accordance with Section 8113(b) of the Federal Employees' Compensation Act and Section 10.124(f) of Title 20 of the Code of Federal Regulations we requests that her compensation be suspended immediately and a formal termination process be implemented. Section 10.124(f) of OWCP's regulations provides that, pursuant to section 8104 of the Act, OWCP if a claimant without good cause refuses to participate in the early but necessary stages of a vocational rehabilitation effort (i.e., interviews, testing, **counseling,** and work evaluations), OWCP cannot determine what would have been the claimant's wage-earning capacity had there not been such a refusal. It will be assumed, therefore, in the absence of evidence to the contrary, that the vocational rehabilitation effort would have resulted in a return to work with no loss of wage-earning capacity, and OWCP will reduce the claimant's monetary compensation accordingly. Any reduction in the employee's monetary compensation under the provisions of this paragraph shall continue until the claimant in good faith complies with the direction of OWCP.

In the event that compensation is not terminated and the claimant provides additional medical opinion indicating her inability to return to work in the Postal Service. We request that the Voc. Rehab. efforts be continued to return our employee to gainful employment outside of the Postal Service in accordance with the FECA at 5 USC 8104.

Thank you for your consideration of this request.

Sincerely

Walter F. McCoy
Walter F. McCoy
Human Resources Specialist

200 SMITH STREET
WALTHAM, MA 02154-0041
(617) 768-3184
FAX: (617) 768-3181

- 2 —

cc: Ellen Wholey
    Senior Injury Compensation Specialist
    Boston District

# EXHIBIT 4

**INJURY COMPENSATION CONTROL OFFICE**
**BOSTON MA 02205-9420**

**UNITED STATES**
**POSTAL SERVICE**

Date:   December 12, 2000

**CERTIFIED:**     7000 0600 0022 2295 0555

Ms. Candy Bell
136 Seaver Street, Apt 28
Boston MA  02121-1544

Re:     Limited Duty Job Offer
        Claim No.  01-0345722

Dear Ms. Bell:

With regard to your job-related injury of 3/15/97, medical evidence indicates that you are capable of returning to work  six (6) hours a day for 4-6 weeks, then increasing to eight (8) hour per day. We are, therefore, offering you duties at the Northwest Boston, 200 Smith Street, Waltham MA.

This is a Level 5, Step O, distribution clerk assignment. The hours of duty will initially be 10:30 AM – 4:30 AM.  In 4-6 weeks  hours of duty will be 10:30 PM – 7:00 AM  Your non-scheduled days will be Sunday/Wednesday.  Your salary will be $19.46  per hour  //  $40,472 per year.

Attached is a description of the duties and physical requirements of the assignment. These duties have been tailored to meet your physical needs at this time.  This assignment is effective immediately, and will continue pending receipt of updated medical documentation every thirty (30) days.

Please indicate your decision by signing the attached assignment form, either accepting or refusing the offer, and return it in the enclosed self-addressed stamped envelope by 12/28 /2000.  Please be aware that this offer will remain open and available to you until a final decision is rendered by OWCP.

Please note that The Federal Employees Compensation Act  states  that an employee who refuses a suitable job offer may have their compensation and medical benefits terminated.

If you have any questions regarding this offer, please contact me at (617) 654-5525.

Sincerely,

Diana C. Valentine
Human Resources Specialist
Injury Compensation Control Office

Attachment

cc:     Claims Examiner, OWCP
        Manager, Frank Manganaro, NWB
        MDO Kim Lucas, NWB, Tour 1
        File

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only: No Insurance Coverage Provided)*

Article Sent To:

CANDY BELL

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Name (Please Print Clearly) (to be completed by mailer)
Candy Bell
Street, Apt. No.; or PO Box No.
136 Seaver St., Apt 27
City, State, ZIP+4
Dorchester MA 02121

7000 0600 0022 2295 0555

PS Form 3800, July 1999          See Reverse for Instructions

# EXHIBIT 5

## LIMITED DUTY JOB OFFER

**UNITED STATES POSTAL SERVICE**

010-345722
SENT TO OWCP
ICCO-BOSTON, MA

| | |
|---|---|
| Name: | Candy Bell |
| SSN: | 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 |
| OWCP #: | 01-0345722 |
| Job Title: | Distribution Clerk |
| Location: | Northwest Boston, 200 Smith Street, Waltham MA 02451 |
| PL: | Primary – PL 726  //  Brookline Unit – PL 734 |
| Hours: | 10:30 PM – 4:30 AM for first 4-6 weeks |
| | Then 10:30 PM – 7:00 AM |
| N/S Days: | Sunday/Wednesday |
| Salary: | $19.46 per hour  //  $40,472 per year |
| Level/Step: | Level 5/Step 0 |

### General Job Description:

- **Distribution Clerk** – General job description - Makes primary and one or more secondary distribution of incoming mail by delivery points based on knowledge of the distribution scheme and one or more secondary distributions of outgoing mail for dispatch based on the knowledge or the distribution scheme prescribed by the Postal Transportation Service.

### Restrictions:

- **Curtailed schedule for 4-6 weeks, then employee able to work eight (8) hours per day with no physical restrictions.**

I accept this job offer: _Candy Bell 1A-06-00_

**(Employee's signature & date)**

I refuse this job offer: _____

**(Employee's signature & date)**

Please be aware that this offer will remain open and available to you until a final decision is made by OWCP.

Reason for Refusal: _____

_____

_____

cc:    Claims Examiner, Department of Labor
      Manager, Frank Manganaro, NWB
      MDO Kim Lucas, NWB, Tour 1
      File
      _Supv Dick Matheson, NWB, T1_

# EXHIBIT 6

 **UNITED STATES**
**POSTAL SERVICE**

**INJURY  COMPENSATION CONTROL  OFFICE**
**BOSTON  MA  02205-9402**

345722
SENT TO DMS
3/9/01

Date:    March 9, 2001

Ms. Pamela Fox, Claims Examiner
U. S. Department of Labor
Office of Workers' Compensation Programs
JFK Federal Building, Room E-260
Boston MA  02203-0091

Re:    Employee      Candy Bell
        Claim #:      01-0345722
        DOI:          3/15/97

Dear Ms. Fox:

Ms. Bell returned to limited duty on 1/13/01 at the Northwest Facility in Waltham MA for 6 hours
per day.  She has been working this schedule from 1/13/01 to present.

Her compensation history (copy attached) indicates she received a check in the amount of $2,174.00
covering the period 12/21/2000 – 1/27/01 for full disability.

It should be noted that she recently submitted a CA-7 covering the period 1/10/01 – 2/23/01 for two
hours of compensation daily.

For your information and action in declaring an overpayment.

If I can provide further assistance, please contact me in writing at the address below or call me at
654-5525.

Sincerely,

Diana Valentine
Human Resources Specialist
Injury Compensation Control Office
U. S. Postal Service
25 Dorchester Avenue
Boston MA  02205-9402

Cc:    Walter McCoy, NEA ICCO Specialist  w/attachment

Attachment

# EXHIBIT 7

 

| U. S. Postal Service | Certified No. | Or Hand Delivered On |
|---|---|---|
| **Information for Precomplaint Counseling** | By Initials *CGy* | Informal No. ( ) |

**Important: Please Read Carefully.** This is the only notification that you will receive regarding the necessity for you to complete this form. This form should be completed and returned to the EEO Office *within 10 calendar days.*

On **2-23-01** (Month, Day, Year), you requested an appointment with an EEO Counselor.

### A. Requester Information

| Name, Last, First, MI | Social Security No. | Home Telephone No. |
|---|---|---|
| Bell Candit H | 035-8248:612 | 989-1985 |

Mailing Address: **P.O. Box 65**

| Postal Facility Where You Work | Position Title | Grade Level | Ofc. Telephone No. |
|---|---|---|---|
| NWB | Clerk | O5 | ( ) |

| Pay Location | Tour | Off Days (If Tour I, Show Nights Off) | Duty Hours |
|---|---|---|---|
| 726 | 1 | Tues - Sat | 6 hr 10:30 to 430 |

Employment Status *(Check One)*:  ☐ Applicant  ☐ Casual  ☐ TE  ☑ Career

Time in Current Position: _____ years  **2** months

### B. Discrimination Factors

In the Postal Service, prohibited discrimination includes actions taken based on your **Race, Color, Religion, Sex, Age (40+), National Origin, Physical and/or Mental Disability, or Retaliation** (actions based on your participation in prior EEO activity). These categories are referred to on this form as factors.

What Factors of Discrimination Are You Alleging? (Be Specific; Describe, i.e., Race-Black, Sex-Female)

1) Gender  2) Reprisal for Prior EEO Complaint / Federal Lawsuit

3) Race

For Retaliation Allegations Only: If you are alleging retaliation discrimination, provide the date(s) and specifics of the EEO activity which you feel caused you to be retaliated against.

1. On **Feb 5 2001** (Month, Day, Year), I engaged in EEO activity.  Case No.: _____

2. On _____ (Month, Day, Year), I engaged in EEO activity.  Case No.: _____

### C. Description of Incident/Activity

Please use the space below to briefly describe the incident or activity which prompted you to seek EEO counseling at this time.

Counselor's Report Page **5** of **13**

On **Jan 13 2001 up till now** (Month, Day, Year), the following occurred:

When passing automation and varies areas I would hear Lizzy Sunken hollar queer comments also were made like can't you smell her from here which in my original complaint several people made comments like sunken black witch. I have been working since Jan 10 and still have not received my pay.

 

Explain why you believe, based on the factors you cited in Section B, that you were treated differently than other employees in similar situations.

1. _____
(Name of Employee)

(Factor(s) describing employee, i.e., Race-Black, Sex-Female)

was treated differently than I when: _Trying to do My Job_

2. _____
(Name of Employee)

(Factor(s) describing employee, i.e., Race-Black, Sex-Female)

was treated differently than I when: _____

3. _____
(Name of Employee)

(Factor(s) describing employee, i.e., Race-Black, Sex-Female)

was treated differently than I when: _____

## D. Officials Responsible for Action

Provide the name(s) of the official(s) who took the action which prompted you to seek counseling at this time.

| 1a. Name | b. Title |
| c. Office | d. Grade Level |
| 2a. Name | b. Title |
| c. Office | d. Grade Level |

Retaliation Allegations Only: Was/were the official(s) listed in Section D above aware of your prior EEO activity? (Explain)
☑ Yes  ☐ No

## E. Resolution Sought

What are you seeking as a resolution to your complaint?

_For this type of behavior to stop_
_indefinitely and immediately_

## F. Grievance/MSPB Appeal

On the incident which prompted you to seek EEO counseling, have you:

| 1 | Filed a grievance on the issue? | ☐ No | ☑ Yes - If yes, _____ _____ |
| | | | (Date)          (Step) |
| 2. | Filed a MSPB appeal on this issue? | ☐ No | ☐ Yes  If yes, _____ |
| | | | (Date Filed) |
| 3 | Veteran's Preference? | ☐ No | ☐ Yes  If yes, number of points ____ |

## G. Anonymity

You have the right to remain anonymous at the Counseling stage of EEO Complaint Processing.

Do you desire anonymity?    ☐ Yes    ☐ No

PS Form 2564-A, December 1999 (Page 2 of 3)

 

## H. Representation

You have the right to retain representation of your choice. (Check One)

☐ I authorize the person listed below to represent me.

(Name of Representative)                                    (Title)

(Organization)

(Mailing Address)

(City, State, Zip +4)                                       (Telephone Number)

☐ I waive the right to representation at this time.

## I. Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction, and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## J. Documentation

Please attach any documentation you wish to submit to support your allegation(s). Include a copy of any written action(s) which caused you to seek counseling at this time.

Note: If you are alleging mental and/or physical disability, you MUST submit medical documentation of your disability at this time or during counseling.

## K. Authorization

Your Signature _____     Date  1-23-01

Return to

EEO COMPLAINTS PROCESSING
GENERAL MAIL FACILITY
25 DORCHESTER AVE  RM 3007
BOSTON MA 02205-9411

Counselor's Report
Page 10 of 13

NOTICE: COMPLETE THIS SECTION ONLY IF YOU NO LONGER SEEK EEO COUNSELING

I hereby request that you close this file from processing. I fully understand that this complaint file will not be reopened once closed, and I waive my right to any further EEO Appeal on this matter. I stipulate that my decision not to pursue counseling is voluntary and did not result from threat, coercion, intimidation, promise or inducement.

Your Signature _____     Date  1-23-01

PS Form 2564-A, December 1999 (Page 3 of 3)

 

 **UNITED STATES**
**POSTAL SERVICE**

# CERTIFICATE OF RECEIPT

2/23/01

**(DATE)**

## I HEREBY CERTIFY THAT ON THIS DATE I RECEIVED A COPY OF THE BOOKLET, <u>WHAT YOU NEED TO KNOW ABOUT EEO</u>, TO KEEP IN MY PERSONAL RECORDS.

X _____

**(NAME/SIGNATURE OF RECIPIENT)**

**NOTE:** THIS DOCUMENT MUST BE RETURNED WITH YOUR
COMPLETED PS FORM 2564-A (INFORMATION FOR
PRECOMPLAINT COUNSELING) WITHIN TEN (10) DAYS AFTER
RECEIPT.

---

# CERTIFICATE OF SERVICE

**(DATE)**

I HEREBY CERTIFY THAT THE INFORMATION BOOKLET WHAT YOU
NEED TO KNOW ABOUT EEO WAS MAILED TO

_____ VIA CERTIFIED MAIL #_____
ON THIS DATE; OR PROVIDED TO _____ ON
THIS DATE; OR PROVIDED TO _____ DURING
AN OFFICE VISIT ON THIS DATE.

_____
**(NAME/SIGNATURE OF SERVER)**

Counselor's Report
Page _11_ of _13_

EXHIBIT 8

# Roxbury Comprehensive Community Health Center

330 Martin Luther King, Jr. Blvd.
Roxbury, Mass. 02119
617-541-3790, ext. 719Ms

February 27, 2001



Ms. Diane Valentine
25 Dorchester Avenue
Boston, Mass..

Re: Candy Bell

Dear Madam:

The above-named person is still suffering from post-traumatic stress disorder brought on by severe and continued harassment at her job. This disorder has an undetermined life span and can be re-triggered by familiar places, people and events.

Candy is now working six hours per day in an environment very similar to the last. This has not been helpful for her recovery. She is still troubled by intrusive thoughts and images of the emotional abuse she suffered from co-workers. It is imperative that Candy work no longer than six hours per day. She has been in therapy for this disorder for several years with some improvement but still has some unresolved issues.

Sincerely,

Christine L. Caines-Dodson, M.Ed.
Trauma Therapist

# EXHIBIT 9

NORTHEAST AREA
INJURY COMPENSATION OFFICE

 *UNITED STATES POSTAL SERVICE*

April 10, 2001

Ms Susan Richardson
Office of Workers' Compensation Programs
United States Department of Labor
Room E-260 JFK Bldg.
Boston Massachusetts 02203-0091

RE:     Ms. Candy Bell
        010345722

Dear Ms Richardson:

This letter refers to the continuing partial disability of Candy Bell.

The United States Postal Service is interested in returning our employee to a full-time work duties if in fact the employee is found capable of performing full-time work.

The latest medical report in the file does not show a prognosis for a return to full-time duty. Considering the claimant's extended disability for a condition that, as it appears, may be due to an incorrect diagnosis, we are requesting that you arrange for an independent psychological evaluation, second opinion by a board-certified psychiatrist to examine and evaluate the claimant. We request that the psychiatrist be provided all the documents related to this claim, that is, claim Forms, statements by claimant, witnesses, and/or supervisors including her discipline record. We also believe that her prior employment history concerning any similar problems is relevant and should be provided to the IME psychiatrist.

The employing agency contends that generally in Psychiatric cases the subjective statements made by a claimant are accepted as fact by a treating therapist, and become the basis to determining the disability of the claimant, which is what appears to be the situation with this claimant. On 3/1/01 the claimant submitted a letter from her therapist indicating that Ms Bell continues to be harassed at her job. The employing agency challenges this assertion. Neither, the claimant or the Therapist has provided any substantiation to warrant this serious allegation. To the contrary the employing agency has received reports that Ms Bell has engaged in inappropriate behavior designed to provoke her co-workers into making negative comments to her. These reports are similar to the results of an investigation conducted by her supervisor at the time of her injury. The claimant's supervisor submitted a report that he had conducted an investigation into claimant's allegations of harassment and determined that there was no foundation to her claim. The investigation determined that Ms. Bell was the aggressor. This report was submitted to the employing agency's EEO office concerning an EEO claim that Ms Bell was pursuing.

-- 2 --

claimant was scheduled for a Fitness for Duty Examination on 4/2/97, but she refused to attend. On 8/18/97 prior to her removal from Postal employment due to her poor attendance she was offered a Last Chance Agreement, but she refused. During the period that she was out of work receiving compensation OWCP assigned a Rehabilitation Counselor to assist her, but she refused to participate or even talk to the Counselor.

Ms Bell was a patient at the Arbour Hospital from 7/23/97 to 7/28/97. The admission mental status examination of Ms. Bell documented that she reported harassment from her co-workers, which appeared to be **paranoia** and her **insight was impaired.** The claimant was previously hospitalized at the Carney Hospital from 3/26/97 to 3/28/97. Her mental status examination at the Carney hospital indicated that she tested positive for experiencing auditory hallucinations that she can actually hear people criticizing her and making comments about her. Ms Bell also tested positive for paranoid ideation that there is a conspiracy against her. The claimant also had a urine drug screen which tested positive for drug use. Lilia Feinberg, M.D. of the Carney Hospital provided a diagnosis of Ms Bell: Axis I rule out delusional disorder, **rule out major depressive disorder** with psychotic features. Axis II was deferred. Axis II is the category of disorders related to personality problems. Axis IV was diagnosed as moderate. Axis IV refers to psychosocial stressors such as the loss of a job or bereavement. Axis IV frequently is not included in a psychiatric report partly because of the subjective nature of the assessment. On 7/7/97 Donald Barker, M.D. and Susan Carman, R.N., CS wrote a report indicating that Ms Bell was given a diagnosis of major depression. Therefore, it appears that a conflict of medical opinion has existed in this case dating to at least 1997. The independent evaluation is needed to determine if Ms. Bell in fact has a work-related psychiatric condition or a non work-related personality disorder. The claimant is currently in a facility approximately twenty miles distance from the facility where she worked at the time of her injury. She has no contact with the employees and supervisors she worked with at the time of her injury. However, the claimant's behavior and perception of her fellow workers appears to remain consistent to that at the time of her injury. This would suggest a diagnosis of a personality disorder on the part of the claimant. This is why the employing agency requests that an independent evaluation be scheduled without delay.

It must be noted that this claimant never filed a union grievance concerning her working conditions. The claimant filed an OWCP claim and received compensation. She filed an EEO complaint and demanded a large cash settlement. She has applied for and received unemployment benefits. She has applied for and received welfare benefits. She has applied for and received SSI benefits. This suggests the possibility that the claimant may be motivated by economic gain. This is why we question whether Ms Bell has an employment history involving similar claims resulting in monetary gain for her.

Thank you for your consideration of this request. It is requested that you provide the employing agency with your response by 5/11/01.

Sincerely

*Walter F. McCoy*

Walter F. McCoy
Human Resources Specialist

- 3 -

cc: Ellen Wholey
    Manager Injury Compensation Office
    Boston District

    Tony Vano
    H.R. Analyst
    Northeast Area

EXHIBIT 10

**UNITED STATES POSTAL SERVICE**

**EEO Complaint of Discrimination in the Postal Service**
*(See Instructions and Privacy Act Statement on Reverse)*

EEO JUN 12 PM 8:56

| 1. Name | 2. SSN ___-X-2455 | 3. Case No. VB-021-0026-01 |
|---|---|---|

| 4a. Mailing Address (Street or P.O. Box) P.O. BOX 63 | 4b. City, State and ZIP + 4 DOR MA 02121 |
|---|---|

| 5. Email Address | 6. Home Phone (617) 287-1953 | 7. Work Phone |
|---|---|---|

| 8. Position Title (USPS Employees Only) CLERK | 9. Grade Level (USPS Employees Only) | 10. Do You Have Veteran's Preference Eligibility? ☐ Yes ☒ No |
|---|---|---|

| 11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4) C-117 (MCD) | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory Joan Marie NEC chairloy Patrick ? Eric Dennis ? |
|---|---|

| 13a. Name of Your Designated Representative MATTHEW COBB | 13b. Title |
|---|---|

| 13c. Mailing Address (Street or P.O. Box) LAW OFFICE OF MATTHEW COBB 101 TREMONT STREET BOSTON MA 02108 | 13d. City, State and ZIP +4 |
|---|---|

| 13e. Email Address | 13f. Home Phone (617) 357-7300 | 13g. Work Phone |
|---|---|---|

* Providing this information will authorize the Postal Service to send important documents electronically.

| 14. Type of Discrimination You Are Alleging | 15. Date on Which Alleged Act(s) of Discrimination Took Place |
|---|---|
| ☒ Race (Specify): ☐ Sex (Specify): Sex, etc. | |
| ☒ Color (Specify): ☐ Age (40+) (Specify): | from January 15, 2001 |
| ☐ Religion (Specify): ☐ Retaliation (Specify Prior EEO Activity): | until PRESENT |
| ☐ National Origin (Specify): ☐ Disability (Specify): | |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d)*

repeatedly the was in the past at the G.P.T. I am consistenly and continuously isolated, degraded and dehumanized by peers and management. State Hunts such as clearly you know your a fucken gay is said aloud so I can hear the remarks by Dike comments like what's the matter Do I stink which is this

17. What Remedy Are You Seeking to Resolve this Complaint?

the Greer Sexton lets give the fucken gay a Gair shit.

for the harrassment to stop

| 18. Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS Mediator? ☐ Yes (Date you received the Notice of Final Interview): _____ ☒ No | Formal Complaint Page 1 of 2 |
|---|---|

| 19a. Signature of Dispute Resolution Specialist Mary Ann Keefe | 19b. Date 5/25/01 |
|---|---|

| 20. Signature of Complainant or Complainant's Attorney | 21. Date of this Complaint 6-8-01 |
|---|---|

PS Form 2565, March 2001 (Page 1 of 2)

## Privacy Act Notice

The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO Program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## Instructions

A. Use this form to file a formal complaint if you are an employee or applicant who believes that you have been discriminated against by the Postal Service because of your race, color, religion, sex, age (40+), national origin, or disability. You must have presented the matter to an EEO Dispute Resolution Specialist within 45 calendar days of the date the incident occurred or, if a personnel action is involved, within 45 calendar days of the effective date of the action.

B. Unless you have agreed to extend the 30-day period for an additional 60 calendar days, you will receive a notice of right to file a formal complaint within 30 calendar days from the date of your first contact with the EEO Office. You must file your formal complaint within 15 calendar days of the date on which you receive your notice of right to file. If you do not receive a notice of right to file within the appropriate time period, you may file a formal complaint at any time thereafter, up to 15 calendar days after receiving the notice.

C. If you have agreed to participate in alternate dispute resolution (ADR), the informal process must be completed within 90 calendar days of your first contact with the EEO office. You have a right to file a formal complaint at any time thereafter, up to 15 calendar days after you have received your notice of right to file.

D. Your notice of right to file contains the address where your formal complaint must be mailed or delivered. The formal complaint will be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within 5 days of the expiration of the filing period.

E. The time limits for filing a formal complaint may be extended if you show that you were prevented by circumstances beyond your control from timely submitting the complaint, or if you present other reasons considered sufficient by the Postal Service.

F. If you need help in preparing this form, you may obtain assistance from a representative of your choice. You may also seek guidance from the dispute resolution specialist who issued you the notice of right to file.

G. Your formal complaint must be in writing and must be signed and dated by you or your attorney. You are entitled to a representative of your choice at all stages of the EEO complaint process; however, only an attorney can sign official EEO documents on your behalf.

H. If your written complaint is accepted, it will be assigned to an EEO complaints investigator who will provide you with an opportunity to present all facts that you believe resulted in the alleged discrimination. The EEO complaints investigator will conduct a thorough review of the circumstances under which the alleged discrimination occurred.

I. While your complaint is under investigation, you may amend it to add claims that are like or related. Contact the EEO office for the address where your written amendment request must be mailed or delivered.

J. You or your representative will each be provided a copy of the completed investigative file. You have the right to request a hearing within 30 calendar days of the date you receive the investigative file by mailing or delivering your request to the appropriate Equal Employment Opportunity Commission (EEOC) District Office with a copy to the area Manager, EEO Compliance & Appeals. If you are represented by an attorney, the 30-day period will begin on the date your attorney receives a copy of the case file. Instead of requesting a hearing, you may request an agency decision without a hearing and the head of the agency or his/her designee will issue you a decision letter with appeal rights.

K. If you request a hearing, the EEOC will appoint an administrative judge (AJ) to conduct a hearing. The AJ will notify you and the Postal Service of the right to seek discovery prior to the hearing to develop evidence reasonably on matters relevant to the issues raised in the complaint(s) to be heard. Attendance at the hearing will be limited to persons the administrative judge determines have direct knowledge relating to the complaint. Hearings are part of the investigative process and are closed to the public.

L. Following the hearing, the AJ will send you and the agency a copy of the hearing record, including the transcript and his/her decision. The head of the agency, or his/her designee, will review the entire record, including the transcript, and will determine whether or not to implement the AJ's decision. You will receive the agency's notification of final action within 40 days of the date the agency receives the AJ's decision. If the agency's final action will not fully implement the AJ's decision, the agency must appeal to the EEOC. A copy of the Postal Service's appeal will be attached to your notification of final action.

M. If you are not satisfied with the decision of the AJ or the agency's final action on the decision, you have the right to appeal within 30 calendar days after receiving notification of the agency's final action. Your appeal must be mailed to the EEOC at the following address:

EEOC
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC 20036-9848

N. Instead of filing an appeal to the EEOC's Office of Federal Operations (OFO), you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the agency's final action.

O. You may also file a civil action in an appropriate U.S. district court after 180 calendar days have passed from the date you filed the complaint if the final agency action has not been issued and no appeal has not been filed; within 90 days of receipt of the OFO's decision on your appeal; or after 180 days have passed from the date you filed your appeal with the OFO, if there has been no decision issued on that appeal.

P. Special statutory provisions in the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a, relate to age discrimination. The Public Law sets forth the right to by-pass the administrative complaint processing procedure and file a civil action. For additional information, contact the EEO office.

Q. Under the Equal Pay Act, you have the right to file a civil action without exhausting the administrative procedures.

R. You must keep the EEO complaint processing office aware of your current mailing address at all times. Failure to notify the EEO complaint processing office and the EEOC of an address change could result in the dismissal of your complaint.

Formal Complaint
Page 2 of 2

EXHIBIT 11

PLANT MANAGER
NORTHWEST BOSTON P&DC


*UNITED STATES*
*POSTAL SERVICE*

June 20, 2001

Richard P. Zimon, MD
U.S.P.S. Medical Officer
Boston, MA 02205

Subject: Fitness for Duty – Candy Bell, FTR Distribution Clerk – NWB P&DC

I hereby request a Fitness for Duty Examination be completed for the subject employee.

Ms. Bell is currently a FTR Distribution Clerk at the NWB P&DC. She has been at this facility for approximately 10 months.

Ms. Bell has surfaced a concern regarding the Workplace Environment and behavior of other employees.

In order to effectively accommodate this employee, it is essential that her restrictions be updated and her suitability for group work is determined.

It is my responsibility to provide a safe and hostile free Work Environment. This responsibility can be supported by the results of the FFDE. I wish to be precise in making any accommodation with the employee's restrictions and/or needs. Please advise the employee ASAP, regarding the schedule for this examination. A copy of the schedule to the undersigned would be appreciated.

Frank J. Mangararo
Plant Manager, Northwest Boston P&DC

Cc: Norma Souto RN – OHNA
    K. Shanahan – Mgr. Personnel Services
    J. Mahan – MDO, Tour 1 - NWB

COPY

Request for Fitness-for-Duty Examination



**UNITED STATES**
**POSTAL SERVICE**

The purpose of the fitness-for-duty examination is to determine whether or not an employee is medically able to perform his or her responsibilities. The employee's supervisor submits the request to the installation head or designee, who concurs with or denies the request. If there is concurrence, the request is forwarded to the Human Resources manager or designee. The supervisor must submit specific substantiating information with the request, including a copy of the attendance record, a job description with functional and environmental factors, and all other relevant observations regarding the employee.

It is essential that this substantiating documentation be specific and all-inclusive. This document along with the substantiating information may be submitted in its entirety to the examining professional.

| Date *(MM/DD/YYYY)* | Time | Pay Location | Facility | |
|---|---|---|---|---|
| 06/21/2001 | | 726 | NORTHWEST BOSTON P&DC | |

| Employee's Name | Social Security No. |
|---|---|
| Ms. C. BELL | 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 |

| Street Address | Telephone No. *(Include Area Code)* |
|---|---|
| 136 SEAVER STREET    APT #28 | |

| City | State | Zip Code |
|---|---|---|
| BOSTON | MA | 02121-1544 |

| Tour and hours | Non-scheduled Days |
|---|---|
| TOUR 1 - 10:30pm - 4:30 am | SUN/WED |

| Job Title | Duty Status |
|---|---|
| DISTRIBUTION CLERK-LEVEL 5 - NWB P&DC | WORKING |

## Fitness for Duty – Form 2492

This Form is to be sent to:
Acting Manager Human Resources
25 Dorchester Ave.
Room 4003
Boston, MA  02205

EXHIBIT 12

 

**U.S. Postal Service**
**EEO Investigative Affidavit (Complainant)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 1 | 3 | 1B-021-0026-01 |

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| Bell    Candy | NWB |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 | 6. Unit assigned |
|---|---|---|---|
| Clerk | 5 | 200 Smith St, Waltham, MA | primary |

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security

clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage, to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## Important Information Regarding Your Complaint

This PS Form 2568-A, EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, EEO Investigative Affidavit (Continuation Sheet), as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit form. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7    Statement (Use Form 2569 if additional space is required.)

Please see attached two page statement of Candy Bell. The said statement is incorporated herein by reference and, furthermore, every word set forth therein is true, is based upon by own personal knowledge, and that I make the entire statement under the pains and penalties of perjury this 31st day of July, 2001.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date | |
|---|---|---|
| Candy Bell | 7/31/01 | Affidavit A Page 7 of 9 |

PS Form 2568-A, March 2001

 

The following is my testimony regarding the accepted issues. I have constantly and continuously been harassed and force to work in a hostile environment. The discriminatory acts are based on my race which is black, my sex which is female and in retaliation for prior EEO activity that started in 1990 then begin again when I returned back to work January 13, 2001 and still continues. My peers and management have subjected me to insults, degradation and humiliation.

After proving my complaints of harassment and management's complete knowledge, allowance and participation of these discriminatory, degrading acts to the postal compensation board. I was given my position at Waltham northwest post office. A few managers and employees formally worked at the gmf were this behavior first originated, therefore they are well aware of my issues with this treatment.

The management official Patrick Barry not only allows discriminatory comments yelled across the unit but also instigate and participates in the act of degrading humiliating me.

I know jean Marie is well aware of the fact I do not like being called a lesbian, a dike, a fucken queer because I told her so and complained to my immediate supervisor.

I know charley is well aware of the fact I do not like being greeted hay gay, what's that smell, there's too many gays in this unit because of my complaints of this slanderous behavior.

I know AJ is well aware of the fact I do not like being referred to, suggest as or called hay gay time for break, she's in a good mood must of been at a gay bar this weekend. Because I told her so and complaint.

January 13 charley yells out good job gay and AJ replies ya well it's her night off so she gets to sleep tonight.

March 12 2:10am genny yells out ya she must love it in jail, Charley says who the dike.

March 25 1:30am guy in automation yells in my direction with noone else in the unit hay gay. 4:30am as I was leaving I asked him what his name was he told me mike but ask why did I want to know, did he do something disrespectful to me. I said you know you did.

April 2 Theresa complained to management about the guys in automation cheering noises all night. That it was unprofessional and disrupted and not a good working environment.

April 4 12:30am Patrick Barry says to gean Marie your gay Ginny. Ginney say oh no pat, I am not gay. Pat says then well there is allot of gays in here.

March 28 12:00am Patrick Barry says to genny lets give the gay an earful. 2:35am theresa ask Steve to quiet Ginny down because she was yelling comments about why are some women gay and varies position she likes in bed Theresa was so upset she said she was going straight to managamero that morning to complain.

*Affidavit Page 5 of 9*

June 6 1:05am genny as walking to the beak area (with Theresa and aj) yells candy is a fucken gay. 1: 35am after break I ask dick mattews if I can talk to him and ginney. He tells me no tell me what's going on after he tacks to ginney for about ten minutes. He tells me if I am sure I hear that comment, and Ginny never said anything like that before.

 

As I stated before these kinds of comments are made basically every night on a daily continuous basis. People will say these comment to my face when I complain management not only makes excuses for them but put displanary actions on me I was sent to have a fitness for duty asking if I could work in a group setting. I was asking if wanted to be move, which is like giving the harasser, what they want.

As resolution to this complaint I am seeking the immediate stop to this behavior plus

Morey:

Additionally, the prior EEO activity set forth above has resulted in my current lawsuit in the United States Court in Boston, case no. 00 - 10054 MLW.

Affidavit 9
Page 9 of 9

page 3.F 3.

Case no.
1B - 021 - 0026 - 01
Carol Bell

# EXHIBIT 13

**UNITED STATES POSTAL SERVICE**

# INJURY COMPENSATION CONTROL OFFICE
## BOSTON MA 02205-9420

Date:    December 13, 2001

CERTIFIED:   7000 1670 0013 1827 2126

Re:    Limited Duty Assignment
       Claim No.  010-345722

Ms. Candy Bell
136 Seaver Street, Apt 28
Boston MA  02121-1544

Dear Ms. Bell:

With regard to your job-related injury of 3/15/97 and your present assignment at NWB Waltham MA, this office has been notified by Management that the position is no longer available.  We are, therefore, offering you duties at the Dorchester Center Post Office, 450 Talbot Avenue, Dorchester MA 02124 and its satellite unit in Codman Square, Dorchester MA

This is a Level 5, Step O, distribution clerk position.  The hours of duty will be 5:30 AM – 11:30 AM and 12:30 PM – 2:30 PM.  Your non-scheduled days will be Sunday/Friday.  Your salary will be $19.46 per hour // $ 40,472  per year.

Attached is a description of the duties.  These duties have been tailored to meet your physical needs at this time.  This assignment is effective immediately.

Please indicate your decision by signing the attached assignment form, either accepting or refusing the offer, and return it in the enclosed self-addressed stamped envelope by 12/20/2001.

Please note that The Federal Employees Compensation Act states that an employee who refuses a suitable job offer may have their compensation and medical benefits terminated.

If you have any questions regarding this offer, please contact me at (617) 654-5525.

Sincerely,

*Diana Valentine*

Diana C. Valentine
Human Resources Specialist
Injury Compensation Control Office

Attachment

cc:    Claims Examiner, OWCP
       (A) Manager, CSO, Area 4, Patrick J. Ring
       Manager, Northwest Boston, Frank Manganaro
       MDO Kim Lucas, Tour 1, NWB
       Manager, Dorchester Center, Tammy Qninlin
       Human Resonrces Specialist, ICCO, Carol Cinelli

# EXHIBIT 14

NORTHEAST AREA OFFICE

 **UNITED STATES POSTAL SERVICE™**

## UNITED STATED POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

Candy M. Bell,
Complainant,

Case No. 1B-021-0026-01

v.

Filed on June 8, 2001

John E. Potter
Postmaster General,
Respondent.

### Notice of Final Decision

This is the Postal Service's final decision in regard to your complaint of discrimination. In that complaint, you claim discriminatory harassment/hostile work environment based on race, color, sex and in retaliation for prior EEO activity in that since January 13, 2001 and continuing, you were subjected to insults, degradation and humiliation by your peers and management.

Your complaint was processed by an Equal Employment Opportunity Investigator, after which a copy of the Investigative Report was transmitted to you. Following receipt of that report, on or about January 24, 2005, you had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final decision without a hearing. As you failed to request either a hearing or final agency decision without a hearing, this decision is being issued in accordance with EEOC Regulation 29 C.F.R. 1614.110(b).

To prevail on a claim of unlawful discrimination, a complainant must satisfy the three-part evidentiary scheme in **McDonnell Douglas Corporation v. Green**, 411 U.S. 792 (1973). A complainant must initially establish, by preponderant

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

Candy M. Bell
Page 2

evidence, a **prima facie** case of discrimination. The **prima facie** elements are determined by the circumstances of the case and the bases of discrimination alleged. **International Brotherhood of Teamsters v. United States**, 431 U.S. 324, 358 (1977). The agency must then articulate legitimate nondiscriminatory reasons for its actions. Finally, the burden returns to the complainant to prove, by a preponderance of the evidence, that the agency's ostensibly legitimate and nondiscriminatory reasons are pretextual. **Cooper v. Federal Reserve Bank of Richmond**, 467 U.S. 867, 875 (1984); **U.S. Postal Service Board of Governors v. Aikens**, 460 U.S. 711, 715-6 (1983); **Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 253-6 (1981).

At all times, the ultimate burden of persuasion remains with the complainant. **Board of Trustees of Keene College v. Sweeney**, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993). In **Hicks**, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

To establish a **prima facie** case of reprisal discrimination, a complainant must show that: (1) s/he engaged in prior protected activity: (2) the agency official(s) was aware of the protected activity; (3) s/he was subsequently disadvantaged by adverse treatment; and (4) there is a causal link between the protected activity and the adverse treatment.    **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318, 324 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); **Manoharan v. Columbia University College of Physicians and Surgeons**, 842 F.2d 590, 593 (2d Cir. 1988) and **Whitmire v. Department of the Air Force**, EEOC Appeal No. 01A00340 (September 25, 2000).   The causal connection may be shown by evidence that the adverse treatment followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. **Grant v. Bethlehem Steel Corp.**, 622 F.2d 43 (2nd Cir. 1980). To support a finding of unlawful retaliation, there must be' proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

The complaint file indicates that at the time of the events described herein, you were a Full-Time Regular Distribution Clerk, PS-05, at the Northwest Boston Processing and Distribution Center (P&DC) in Waltham, Massachusetts. You state that since January 13, 2001 and continuing, you were subjected to insults, degradation and humiliation by your peers and management. The complaint file indicates that you reported for work at the Northwest Boston P&DC on or about January 14, 2001, after an absence of approximately one (1) year. Prior to your absence, you had worked at a different postal facility. In your affidavit, you indicated that incidents of harassment occurred on the following dates in 2001: January 13; March 12; March 25; March 28; April 2; April 4; and June 6. You

Candy M. Bell
Page 3

described the incidents as involving co-workers speaking loudly, making comments such as: "who is the dyke," why are some women gay; calling out "hey gay" in your direction; "there are a lot of gays here;" and "Candy is fucken (sic) gay." You testified that similar comments were made to you nightly on a continuous basis. You identified the following co-workers as making these comments: Charley (Charles Reidinger); Ginny (Jean Marie Healey); AJ (Aeja Arezaga); and Patrick Barry. You also stated that the guys in automation would make cheering noises all night which was disruptive and unprofessional. According to your testimony, you complained to management about being harassed, but no action was taken against the co-workers involved in the incidents comprising the harassment. The complaint file indicates that you were reassigned to the Dorchester P&DC on or about December 29, 2001. You believe that the actions described above were taken based on your race (black), color (black), sex (female), and in retaliation for your prior EEO activity.

I will now address your harassment claim.

Harassment of an employee that would not occur but for an employee's race, color, sex, national origin, age, disability, or religion is unlawful, if it is sufficiently severe or pervasive. **McKinney v. Dole**, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985). To establish a **prima facie** case of hostile environment harassment, a complainant must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; and (4) the harassment affected a term or condition of employment and/or had a purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment. **Humphrey v. United States Postal Service**, EEOC Appeal No. 01965238 (October 16, 1998); 29 C.F.R. 1604.11.

I find that you have failed to prove a **prima facie** case of hostile work environment, as you failed to prove elements 2 and 3; that the harassment complained of was based on a statutorily protected class, i.e. your race, color, sex and/or prior EEO activity. You have provided no specific testimony as to why you believe that the actions complained of were based on your race, color, sex and/or prior EEO activity. I find that based on the evidence contained in the complaint file, I cannot conclude that you were subjected to the incidents as alleged. Management testified that they investigated your claims of harassment immediately upon receiving your complaint about co-worker harassment. Frank J. Manganaro, Plant Manager investigated your complaint and made frequent observations of your work area, however he determined that your complaints were not credible. James T. Mahan, Manager Distribution Operations also investigated your complaints of harassment. He stated that he found no support for your claims of harassment. According to Mr. Mahan, he received several written complaints from some of your co-workers claiming that you were instigating confrontations with your co-workers. Based on the evidence

Candy M. Bell
Page 4

contained in the complaint file, I cannot conclude that you were subjected to incidents of harassment based on your race, color, sex and/or prior EEO activity.

Further, I find that you have failed to establish that the incidents you described rise to the level of discriminatory harassment. The EEOC has repeatedly found that remarks or comments unaccompanied by a concrete agency action are not a direct and personal deprivation sufficient to render an individual aggrieved. **Johnson v. Department of Justice**, EEOC Appeal No. 01986199 (February 18, 2000); See also, **Backo v. United States Postal Service**, EEOC Request No. 05960227 (June 10, 1986); **Henry v. United States Postal Service**, EEOC Request No. 05940695 (February 9, 1995). The EEOC has held that in order to establish a case of harassment that creates a hostile work environment, the harassment of which complainant complains must be ongoing and continuous in order to constitute unlawful discrimination. A few isolated incidents are usually not sufficient to show harassment. **Banks v. Department of Health and Human Services, supra; McGivern v. United States Postal Service**, EEOC Request No. 05930481 (March 17, 1994); **Vargas v. Department of Defense**, EEOC Request No. 05931047 (October 7, 1993). Therefore, in assessing whether the alleged harassment effected a term, condition, or privilege of employment, the conduct at issue must be viewed in the context of the totality of the circumstances, considering, **inter alia**, the nature and frequency of offensive encounters and the span of time over which the encounters occurred. **McGivern suprs,** citing **Ribidue v. Osceola Refining Co.**, 805 F. 2d 611, 620 (6th Cir. 1988); **Gilbert v. City of Little Rock**, 722 F.2d 1390, 1394 (8th Cir. 1993). The anti-discrimination statutes are not a "general civility code." The conduct must be "so objectively offensive as to alter the 'conditions' of the victim's employment." Consequently, even assuming the facts most favorably to you, I find the conditions of employment were not so altered or sufficiently severe or pervasive to create a hostile work environment. **Burlington Industries, Inc. v. Ellerth**, 118 S.Ct. 2257 (1998); and **Faragher v. City of Boca Raton**, 118 S. Ct. 2275 (1998). **DiFruscio v. Social Security Administration**, EEOC Appeal No. 01982006 (September 13, 2000) (routine work assignments, instructions, and admonishments did not rise to a level of harassment or disparate treatment by the supervisor against the appellant).

In terms of establishing a **prima facie** case of reprisal, I find that you have failed to prove element 4 of a **prima facie** case; i.e. there is a causal link between the protected activity and the adverse treatment. The iComplaints tracking system indicates that your most recent prior EEO activity, case # 1B-021-0060-97 was initiated on June 26, 1997. (ROI, Exhibit 10). Since the actions complained of in the instant case did not occur until at least 3.5 years after your previous EEO activity in case # 1B-021-0060-97 was initiated, too much time has elapsed to establish the requisite causal connection between the management actions complained of and your prior EEO activity. In **Clark County School District v. Breeden**, 2002 WL 402573 (SCT 2001), the U.S. Supreme Court held that to establish nexus, the temporal proximity must be "very close," citing **O'Neal v.**

Candy M. Bell
Page 5

**Ferguson Constr. Co.**, 237 F.3d 1248, 1253 (CA 10 2001); **Richmond v. Oneok, Inc.**, 120 F.3d 205, 209 (CA 10 1997)(3-month period insufficient); **Hughes V. Derwinski**, 967 F.2d 1168, 1174-1175 (CA 7 1992)(4-month period insufficient).

Additionally, the EEOC is relying on shorter proximity time periods, i.e. 3-4 months. **Brown v. Department of Defense**, EEOC Appeal No. 01990413 (February 13, 2002); **Lombardo v. United States Postal Service**, EEOC Appeal No. 01996935 (April 4, 2002); **Turner v. United States Postal Service**, EEOC Appeal No. 01A03220 (February 21, 2003); **Turner v. Department of Defense**, EEOC Appeal No. 01A21018 (May 29, 2003); **Lynch v. United States Postal Service**, EEOC Appeal No. 01A24705 (August 14, 2003). In **Buggs v. Powell**, 293 F. Supp. 2d 135 (D.D.C. 2003), the U.S. District Court for the District of Columbia states that while courts have not established the maximum time lapse between protected activity and alleged retaliatory actions for establishing causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length. Further, the District Court stated that the cases cited by the **Breeden** Court seem to suggest that if a plaintiff relies upon temporal proximity alone to establish causation, the time span must be under three months. For these reasons, I find that you are unable to establish a **prima facie** case of reprisal.

After carefully considering the entire record, and applying the legal standards outlined in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973), and **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318 (D.Mass.), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases), I find that you have failed to prove that you were subjected to discriminatory harassment as alleged and your complaint is now closed.

## APPEAL RIGHTS

## APPEAL TO THE EEOC

You have the right to appeal the Postal Service's final decision to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848**, within 30 calendar days of your receipt of this decision. You may use PS Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting

Candy M. Bell
Page 6

documentation or brief were also submitted to the **Manager, EEO Compliance & Appeals, Appeals Processing Center, USPS, 6 Griffin Road North, Windsor, CT 06006-7052.** You are advised that if you file your appeal beyond the thirty (30) day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's final decision in this case, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Postal Service's final decision, within ninety (90) calendar days of the EEOC's final decision on any appeal, or after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Your Name) v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

for  William C. Coutu
Manager, EEO Compliance & Appeals

April 21, 2005
Date

Enclosures:  PS Form 3573
Certificate of Service

EXHIBIT 15

✎AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of ___ MASSACHUSETTS ___

CANDY BELL
      (Plaintiff)
        V.

**SUMMONS IN A CIVIL CASE**

JOHN E. POTTER
In his official capacity as
Postmaster General of the United
States of America
      (Defendant)

CASE NUMBER:

# 05-11485RWZ

TO: (Name and address of Defendant)

John E. Potter
Postmaster General
United States Postal Service
C/O Northeast Area
Windsor CT 06006-7062

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

      James E. Small, Jr
      P.O. Box 190024
      Roxbury, MA 02119

an answer to the complaint which is herewith served upon you, within ___ 20 ___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.



SARA~

CLERK

(By) DEPUTY CLERK

US POSTAL SERVICE
LAW DEPARTMENT

DATED - 7 2005

WIN....
WINDSOR CT ....

JUL 14 2005

**EXHIBIT**
*3*

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant.  Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
            Date        *Signature of Server*

                      _____
                      *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
District of Massachusetts
No.05- 11485 RWZ


CANDY BELL
(Plaintiff)

v

JOHN E. POTTER,
In his official capacity as Postmaster General of the United States of America,

UNITED STATES POSTAL SERVICE
(Defendants)


1. This is an action for declaratory, injunctive, and other appropriate relief, including

back pay, costs, and attorney's fees, to redress the deprivation of Plaintiff's rights

secured by Title VII of the Civil Rights Act of 1964,  42 USC section 2000e et seq.

2. The jurisdiction of this Court is invoked to secure protection of and to redress

deprivation of rights secured by Title VII providing for injunctive and other relief

against discrimination in employment on the basis of sex. This Court has jurisdiction of

this action under 42 U.S. C. 2000e- 5(f) (3).

Parties

3. Plaintiff Candy Bell is a female citizen of the United States and the Commonwealth of
   Massachusetts. At all times material herein, plaintiff has resided in the juridical
   district of this Court. Plaintiff is an active employee of the defendant United States
   Postal Service from July 31, 1988 until the present.

4. Defendant is an entity of the United States Government with a place of business at
   Boston, MA.  Defendant is charged with the responsibility of post delivery and
   kindred matters.  Defendant is an employer within the meaning of 42 U.S.C. 2000e
   (b).

Administrative Procedure

5. Within 180 days of the occurrence of the acts set forth herein, plaintiff filed charges
   of employment discrimination against the defendant.

6. On or about April 18, 2005, a final action of the Agency was issued that entitled
   plaintiff to institute a civil action in the appropriate Federal District Court within 90
   days of the date of receipt of the notice.

Factual Allegations

7. Plaintiff was employed by defendant effective July 31, 1988. She was initially

assigned as a clerk to the postal facility located in Dorchester section of Boston,

MA, the General Mail Facility.

8.  On or about January 11, 2000 plaintiff filed a complaint in the United States

Federal District Court, District of Massachusetts that alleged discrimination

based upon race, sexual harassment and retaliation for participation in protected

activity.

9.  On or about December 2002 a finding and verdict favorable to plaintiff was

entered in the Federal District Court.

10. As the case mentioned in paragraphs 9 and 10 was pending, plaintiff was

transferred from the General Mail Facility in Boston, MA. to the Boston

Processing and Distribution Center, 200 Smith Street, Waltham, MA.

11. On or about the commencement of her work at the facility in Waltham, MA.

plaintiff became the target of racial and gender based slurs, actions and

discrimination.

13. Among other things there were derogatory comments about plaintiff's physical

appearance, her race, gender and sexually oriented commentary about what was

believed to be plaintiff's lifestyle.

14. The comments and other discriminatory statements were ratified by plaintiff's supervisors', management and other employment related superiors as they were allowed to continue and said supervisors, management and other employment related superiors, in some instances, participated in the actions and comments.

15. The actions of the coworkers and the ratification by the management violated defendant United States Postal Services so called zero tolerance policy.

16. Plaintiff initiated a complaint with respect to the actions of coworkers and supervisors. After a period of time had passed, the complaint was dismissed.

17. During the course of the complaint process initiated by plaintiff, management officials forced plaintiff to participate in a psychological examination to determine her so called fitness for duty.

18. This action was designed to intimidate and chill plaintiff's efforts to address discrimination suffered at the hands of defendants. Further, these actions were on account of plaintiff's race, gender and color.

19. As a direct result of the harassment, plaintiff has suffered serious physical and mental injury.

COUNT I

20. Plaintiff repeats and restates paragraphs 1-19 as if fully reproduced herein.

21. Plaintiff has complied with the procedural prerequisites with respect to this count.

22. The above conduct as against Candy Bell was on account of her race, color and gender.

COUNT II

23. Plaintiff repeats and restates paragraphs 1-19 as if fully reproduced herein.

24. Plaintiff has complied with the procedural prerequisites with respect to this count.

25. The above conduct against Candy Bell was on account of and in retaliation for plaintiff's complaint's pertaining to the harassment and discrimination.


## COUNT III

26. Plaintiff repeats and restates paragraphs 1-19 as if fully reproduced herein.

27. Plaintiff has complied with the procedural prerequisites with respect to this count.

28. The above described acts had the purpose and effect of unreasonably interfering with plaintiff's work performance and created an intimidating, hostile and offensive working environment.


WHEREFORE, plaintiff, Candy M. Bell, demands judgment against the defendant in an amount that is fair and reasonable in order to adequately compensate her for her injuries, together with interest, reasonable attorney fees, punitive damages and costs of this action.


PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS

James E. Small, Jr.
BBO 467220
P.O. Box 190024
Roxbury, MA. 02119
(617) 427-3147

# EXHIBIT 16

1

Vol II
1 - 117

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS


CANDY MICHELE BELL,                    )
                                       )
          Plaintiff,                   )  DOCKET NO.
-v-                                    )  05-11485-RWZ
                                       )
JOHN E. POTTER, Postmaster General,)
United States Postal Service,          )
                                       )
          Defendant.                   )


THE ORAL DEPOSITION OF CANDY MICHELE BELL,

held pursuant to Notice, and the applicable provisions of

the Federal Rules of Civil Procedure, before Marguerite

Summers,a Court Reporter and Notary Public, within and for

the Commonwealth of Massachusetts, at the offices of the

United States Attorney, 1 Courthouse Way, Suite 9200,

Boston, Massachusetts, on Wednesday, October 11, 2006,

commencing at 2:30 p.m.


ORIGINAL

63

1   man a bitch.

2        Q    No, I understand what you're saying.

3        A    Dyke.

4        Q    And, Ms. Bell, just let me try to clarify this,

5   just so that we can try to get through this.  I am

6   specifically -- and I realize that you have a long history

7   with the postal service and whatever might have taken place

8   at the other facility.

9        A    It's always been there.

10       Q    And I appreciate that, and I appreciate the fact

11  that you may believe that a lot of that prior stuff has to

12  do with this case.  I'm just asking you specifically with

13  regard to what happened in Waltham.  I do not see anything

14  here listed in what has been marked as Exhibit No. 1 that

15  would fall under race discrimination, and so I'm asking you,

16  specifically, at Waltham only:  What comments were stated

17  and when, with regard to your race?

18       A    I feel that things that were done to me were

19  because of my race.  I feel that -- if they felt there was

20  something that was so un -- that they could not work with

21  the fact that I was supposedly a dyke, why did they have a

22  problem with another woman they thought that was that was

23  white?  I felt like some of things that were done to me were

24  because I was black, a woman.

25       Q    Okay.  Can you specifically tell me what things

65

1  gender.

2      A    Mm-hm.

3      Q    Correct?

4      A    Mm-hm.

5      Q    Tell me a little about why you think, specifically

6  for the Waltham facility, you were allegedly discriminated

7  against because of your gender?

8      A    For being woman?

9      Q    Correct.

10     A    Because I felt like some of the comments that were

11 made by men would not have been made to another man.

12     Q    Okay.  And you believe that the comments that you

13 have memorialized here in Exhibit No. 1 give a full

14 description of how you believe you were discriminated

15 against because of your gender?

16     A    That's not everything that happened to me.  I

17 don't know if I would just base it on just those comments.

18 No.

19     Q    Okay.  Can you provide me, please, with other

20 comments that you claimed were discriminatory because of

21 your gender?

22     A    I told you, I think bitch is something you do not

23 call another man.  I think dyke is something you do not call

24 another man.

25     Q    Can you tell me who said those things and when?

66

1    A    The comments that I have written down is probably
2    more accurate than me telling you right off the top of my
3    head.

4    Q    I know, I appreciate that.  So what I was trying
5    to say was, the comments that you have written down here on
6    what we've identified as Exhibit No. 1 would you agree with
7    me that these are the comments that you were, in fact,
8    referring to when you checked off the box under sex
9    discrimination gender?

10    A    Not everything, no.

11    Q    Okay.  Now you said not everything before.

12    A    Mm-hm.

13    Q    Now I asked you what other comments can you think
14    of and who said them?  So let's now forget about Exhibit No.
15    1.  I want new comments and who said them.

16    A    I thought I told you, specifically, that I thought
17    bitch and dyke is something you do not say to another man.

18    Q    Okay.  And what I then asked you ---

19    A    But that is mention in there ---

20    Q    What I then asked you was:  Who made those
21    statements to you in Waltham?

22    A    And that's not written on there anywhere?

23    Q    If it's written here, you can take another look at
24    Exhibit No. 1.  I'm not trying to trick you.  I'm just trying
25    to ---

1          A     Charley says, who, the dyke?  Is that not dyke?

2     Isn't that something you would say to a woman, not to a man?

3     That comment was made.  That, in particular, is the only

4     thing I really see here, but, no, there were other things,

5     and just off the top of my head, no, I can't, but dyke is

6     right there on the page.

7          Q     Okay.  So off the top of your head, you cannot

8     remember anything else, but in terms of what you were

9     discussing, the term, dyke, and the term, bitch, if it shows

10    up here in Exhibit No. 1, those are the comments that you

11    remember, correct?

12         A     Those are comments that I remember at that time,

13    yes.

14         Q     Okay.  Now ---

15         A     Whether it be on the exhibit or not.

16         Q     I understand.

17               Now, you also checked in Box 14, retaliation, and

18    then in parenthesis, it has, specific prior EEO activity.

19    Can you please tell me why you checked that box?

20         A     Because I had already had an EEO complaint before

21    this.

22         Q     Okay.  Did you believe that the alleged

23    discriminatory treatment that you were experiencing was

24    somehow related to your prior case that was in the district

25    court?

115

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS     )
                                  )   SS.
COUNTY OF SUFFOLK                 )

I, Marguerite Summers, a Court Reporter and Notary Public, within and for the Commonwealth of Massachusetts; do hereby certify that there came before me on this 11th day of October, 2006, the person hereinbefore named, who was by me duly sworn to tell the truth, the whole truth, and nothing but the truth, concerning and touching the matter in controversy in this cause; that she was thereupon examined upon her oath, and her examination reduced to typewriting, under my direction, and that this deposition transcript is a true and accurate record of the testimony given by the witness.

I further certify that I am not related to any of the parties hereto or their counsel, and that I am in no way interested in the outcome of said cause.

Dated at Boston, Massachusetts, this 20th day of October, 2006.

Marguerite Summers
NOTARY PUBLIC
My Commission Expires:
November 10, 2011

*APEX Reporting*
(617) 426-3077