```
                UNITED STATES DISTRICT COURT FOR
                  THE DISTRICT OF MASSACHUSETTS

CANDY BELL,                      )
          Plaintiff,             )
                                 )
vs.                              )     Civil Action
                                 )     No. 05-11485-RWZ
                                 )
JOHN E. POTTER, In His           )
Official Capacity as             )
POSTMASTER GENERAL OF THE        )
UNITED STATES POSTAL SERVICE,)
          Defendant.             )
```

**HEARING ON MOTION FOR SANCTIONS**


BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
March 3, 2008
9:26 a.m.




\* \* \* \* \*



CATHERINE A. HANDEL, RPR-CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3  LAW OFFICE OF JAMES E. SMALL, JR., ESQ.
    (by James E. Small, Jr., Esq.)
 4       41 Winthrop Street
         P.O. Box 190024
 5       Roxbury, MA 02119

 6

 7

 8

 9  For the Defendant:

10  UNITED STATES ATTORNEY'S OFFICE
    (by AUSA Rayford A. Farquhar
11       and AUSA Rachael S. Rollins)
         John Joseph Moakley Federal Courthouse
12       1 Courthouse Way, Suite 926
         Boston, MA 02210
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2            (The following proceedings were held in open

3    court before the Honorable Rya W. Zobel, United States

4    District Judge, United States District Court, District of

5    Massachusetts, at the John J. Moakley United States

6    Courthouse, 1 Courthouse Way, Boston, Massachusetts, on

7    March 3, 2008.)

8                    THE CLERK:  Can I see counsel on Candy Bell

9      versus John Potter, please.

10                   THE COURT:  Who is here for the plaintiff?

11                   MR. SMALL:  I am, your Honor.  Attorney

12     James E. Small, Jr.

13                   THE COURT:  And Mr. Farquhar for the

14     government.

15                   MR. FARQUHAR:  Yes, your Honor.

16                   MS. ROLLINS:  Attorney Rachael Rollins.

17                   THE COURT:  Rachael?

18                   MS. ROLLINS:  Rollins, yes.

19                   MR. FARQUHAR:  Notice of appearance was

20     entered last week, your Honor, and Rachael is new to our

21     office.

22                   THE COURT:  Rawlin?

23                   MS. ROLLINS:  R-o-l-l-i-n-s.

24                   THE COURT:  I smile because it's sort of

25     the way a Bostonian would pronounce your name.
```

```
1            There is pending before me a motion for

2    sanctions that the defendant filed last week.  I'll hear

3    you on it, Mr. Small.

4            MR. SMALL:  Yes, your Honor.

5            May I submit my opposition?  I learned of

6    the filing on last Friday.  I have just not had an

7    opportunity to present it to the Court, if I may.

8            THE COURT:  Tell me what the basis for the

9    opposition is.

10           (Attorney Small hands document to the Court.)

11           MR. SMALL:  Well, your Honor, on November

12   5th, 2005, this Court conducted a scheduling conference.

13   At that time the Court identified certain dates with

14   regard to the prosecution of this case.

15           The parties were informed by the Court

16   that: (A) the automatic disclosure was to be completed

17   by December 30th, 2005; (B) that all interrogatories and

18   requests for production of documents were to be served

19   by May 31st, 2006; (C) that any amendments were to be

20   filed by March 1, 2006; all depositions were to be

21   completed by October 31st, 2006; and that a final

22   pretrial conference would be held after a motion for

23   summary judgment.

24           After that scheduling conference, I

25   submitted requests for discovery.  The government did
```

 1    nothing.  The dates came and went.  In particular, on

 2    May 31st, 2006, none -- or strike that -- no requests

 3    for discovery had been filed by the government.

 4            In September of '06, counsel received a

 5    request for deposition, even though depositions were to

 6    have been done by October 31st, 2006.  We agreed.  We

 7    went to a deposition on October 12th, 2006.

 8            During the course of the deposition,

 9    counsel for defendant sua sponte interrupted the

10    deposition and said, "I have to file discovery."  This

11    is six months after the deadline for discovery.  He

12    filed the discovery.

13            There was no presentation of a change in

14    the scheduling order as per this Court.  By rule -- Rule

15    16.1, I believe that in order to change a scheduling

16    order, it must be done by leave of the Court.  A justice

17    of the Court can do it and a magistrate can do it.  No

18    one changed the scheduling order.

19            Nonetheless, I submitted responses, and it

20    was upon the submittal of responses that the government

21    took the position that somehow I was violating the

22    discovery rules, although their discovery was

23    inappropriately submitted beyond the deadline, and I was

24    just doing it.

25            Moreover, within the context of the

1    inappropriately-submitted discovery, a motion to compel

2    was filed.  I agreed to submit tax returns and I agreed

3    to -- at the suggestion of my brother, to execute an

4    authorization allowing him to get my client's medical

5    records in April of '07, and I provided those.  And then

6    later in the fall of this year, I received a motion to

7    dismiss based upon my failure to deal with the

8    discovery, when, in actuality, the discovery deadlines

9    had all passed prior to the government doing anything in

10   the nature of discovery.

11            Beyond the procedural problems related to

12   the discovery -- or the requests for discovery, my

13   brother has indicated that this is an emergency.

14            It's not.  He knew about this case on the

15   date -- on November 5th -- strike that -- November 14th,

16   2005, when the scheduling order was entered.  It wasn't

17   sufficient enough an emergency to request information

18   before the 31st of May.  Moreover, in April, when I gave

19   him the medical authorizations, nothing was done.

20            Today, on the eve of trial, he now says

21   that he needs the information that he's had an

22   opportunity to garner for many months.

23            Furthermore, in connection with his summary

24   judgment motion, he brings up the fact of the

25   psychological profile.  He brings up the fact that my

1   client was -- had had prior problems.  He knew -- or as

2   a practical matter, he knew that there was a

3   psychological history here, and I think that -- you

4   know, to say that he lucked upon it by looking at a

5   prior case may stretch credulity.

6            Finally, your Honor, this is a case where

7   the judicial process has been in many ways affected and

8   altered by an administrative process.  That is to say,

9   when a federal employee alleges discrimination, there is

10  a protocol that has to be followed with the EEOC.

11           In 1997, which was mentioned in the summary

12  judgment, that protocol was followed and the case was

13  entered on January the 11th, 2000 in this Court.

14           While that case was pending, a year later,

15  the facts and circumstances that support or underlie

16  this case commenced.  And, again, the federal employee

17  must follow the protocol and go through EEOC.

18           The EEOC investigation commenced June 8,

19  2001.  It did not end until April 2005, well after the

20  original case in this Court had ended, and the

21  psychological profiles of my client with respect to the

22  first case had been in place and actually were presented

23  to the Court in connection with the prior trial.

24           So, I do believe that I have read, although

25  I don't know where, that discovery is equitable and it

1   should be fair, and I thought that I was being fair by

2   providing information to my brother, and each time I do,

3   it is turned upon me and somehow our efforts are

4   undermined.

5          So, if the Court is inclined to issue

6   sanctions -- and I would point out that in the two cases

7   that are actually cited, the Torres case where there

8   were many, many episodes of continuances, many times

9   where the trial was continued where the plaintiff did

10  almost nothing to prosecute her case or his case, that

11  is factually distinguishable from the case here.

12         Moreover, in connection with the case of

13  Tower-Ventures vs. City of Westfield, although there

14  were problems in the case, the Court requested a show

15  cause hearing to determine whether or not that sanction

16  was warranted.

17         I would suggest to the Court -- and I

18  didn't make it up -- that the totality of the

19  circumstances, the alleged transgressions and the

20  potential prejudice to the parties is not sufficient to

21  dismiss this action.

22         If the government really wants to do more

23  in terms of discovery or speaking with my client, I

24  would agree to that, although the Court has to approve

25  any change in scheduling, but I don't think that

1    dismissal is warranted for this circumstance.

2              Thank you.

3              MR. FARQUHAR:  Thank you, your Honor.

4              Your Honor, this case -- all the discovery

5    that was conducted in this case was conducted with this

6    Court's understanding, with this Court's knowledge and

7    this Court's blessing.

8              The plaintiff in this case, your Honor, is

9    alleging psychological and emotional distress damages.

10   That was something they knew from the very beginning,

11   which pursuant to local Rule 26(b)(1), your Honor,

12   should have at that point -- at the very beginning of

13   this case, it should have been something that, at the

14   very least -- at least, excuse me, that the plaintiff

15   should have identified individuals that may have been

16   treating her during the relative portions of when this

17   case was, in fact, happening.  That's back in 2001.

18              The plaintiff, in fact, had seen

19   psychiatrists, psychologists back in 1997, but there was

20   no indication given to the defendant in this case, your

21   Honor, that she was seeing anyone during the relevant

22   time period of this case.  It wasn't until the time

23   period when we were taking her deposition and when I

24   started to ask about what her emotional distress damages

25   were, that I was told that that was none of my business.

 1              At that point, your Honor -- and that's in

 2    the deposition that can be provided to the Court.  At

 3    that point, your Honor, I felt it necessary that

 4    whomever she was seeing and whatever information was out

 5    there had to be fully memorialized through discovery,

 6    interrogatories and request for production of documents.

 7              That was requested, your Honor, that

 8    anyone -- any medical documents dealing with

 9    psychiatric, psychologists, any type of documents that

10    would go to her mental state be provided to the

11    defendant.  I didn't know whether or not it existed

12    during the relevant time period of this case, even

13    though I did know back in 1997, in the prior lawsuit,

14    that, in fact, she was seen at a psychiatric

15    institution.

16              I did not receive adequate answers, as your

17    Honor will see, to the exhibits attached to my

18    memorandum in support.  I did not receive any adequate

19    responses or answers to answer the question as to

20    whether or not she had seen any type of psychologist or

21    psychiatrist.

22              The defendant moved to compel to ascertain

23    whether or not she, in fact, saw any psychologist or

24    psychiatrist.  This Court received the motion to compel,

25    waited the requisite time period, and there was no

1    response.

2              Based upon no response, this Court allowed

3    the motion to compel and provided the plaintiffs with --

4    the plaintiff with ten days, in fact, to produce any

5    information or records that she had.  That time period

6    came and went.

7              Approximately a month later, the defendant

8    filed a motion to dismiss this case based upon the

9    plaintiff's failure to abide by this Court's order.  The

10   Court denied the motion to dismiss, without prejudice,

11   and, once again, ordered plaintiff to produce any and

12   all information.

13             Nothing was produced, your Honor.  At that

14   point, given the fact that this Court had ordered that

15   information to be provided twice, the defendant assumed

16   that there was no information to be provided or else it

17   would have been provided.

18             We came before this Court for a pretrial

19   conference on January 17.  At that point this Court had

20   already decided much of the defendant's motion for

21   summary judgment.  The only matter that was left in this

22   case, your Honor, was whether or not she had suffered

23   any psychological/emotional distress damages.

24             I turned to the Court during the pretrial

25   conference and said, your Honor, we do not know whether

 1   or not there will be any medical professionals

 2   testifying.  We don't even have any documents relating

 3   to her emotional distress damages.

 4           At that point your Honor turned -- I

 5   submit, your Honor, turned to plaintiff's counsel and

 6   said, He's entitled to this information.  I'll give you

 7   until the 31st of January to provide any information.

 8           I've memorialized that, your Honor, in a

 9   letter to the plaintiff's counsel and provided that as

10   well, your Honor, as an exhibit to my memorandum.  I

11   have received no information.

12           Again, at that point, your Honor, I

13   assumed, certainly, that there would be no medical

14   professionals testifying before the Court and that,

15   secondly, she was not seeing anyone during the relevant

16   time period with regard to her emotional distress

17   damages.

18           Upon preparing for this case, your Honor,

19   and speaking to my witnesses, something just didn't make

20   sense from what I was hearing from my witnesses.

21           What we did, your Honor, with my office

22   just last week, went back to the 1997 case before Judge

23   Wolf and we started to dig around and we started to make

24   random phone calls.

25           We contacted one institution.  They said

```
1   they had no records and no indication that she was

2   present.  Contacted another institution.  They had heard

3   of one of the counselors that she was seeing back in the

4   1997 case.  That individual no longer worked there.  I

5   asked if they knew where she worked.  They gave me an

6   address and phone number of another place.

7             We contacted that place.  She was no longer

8   working there.  They gave us another telephone number

9   and address.

10            I contacted that final place, and at that

11  point they said she's out of state.  And I said, "Well,

12  will you heard of any of these other counselors?"  They

13  said, "Yes, we've heard of this individual, Sandy Range"

14  (phonetic), "but she's no longer working here."  I said,

15  "Okay."  They said, "But we do have records."

16            And I said, "Well, I'll tell you what.  I

17  will send you medical authorization and can you please

18  send me any and all records," which we received last

19  week, I believe Thursday, at noon.

20            I immediately drafted this motion, your

21  Honor, because it dawned upon us, upon receiving those

22  records, that not only had plaintiff been seeing a

23  psychiatrist during the relevant time period, but that

24  what was contained within those documents specifically

25  goes to the heart of the allegations that are left
```

1    before this Court.

2              The concern at this point, your Honor --

3    and I realize this is a very, very serious motion we

4    bring on the eve of trial.  The issue is that but for

5    that extra effort in saying that there is something

6    wrong here, something that doesn't quite make sense, we

7    would not have had the opportunity, certainly, to know

8    this information, potentially have this plaintiff

9    psychoanalyzed.  And, furthermore, your Honor, the

10   defendant would submit that this was deliberate.

11             When I go back to the interrogatories --

12   excuse me -- the deposition, I was told in the

13   deposition that in going into this line of questioning

14   was none of my business, and given the fact that we had

15   to move forward with the motion to compel, various

16   orders of this Court, both in writing and orally, to try

17   to get this information, the defendant would submit that

18   this was information that was being deliberately not

19   provided.  But for the fact that it cuts directly at the

20   heart of the issue in this case, your Honor, we would

21   not have filed this type of a motion.

22             Given the fact, your Honor, that the

23   discovery in this case, in our opinion, shows a clear

24   intent for the defendant not to get this information, we

25   believe at this late stage, your Honor, that dismissal

1  of this case is not only warranted, it's something that

2  certainly has happened before in this Court here, in the

3  United States District Court, and we think that it is

4  the proper remedy in this case.

5              THE COURT:  One minute.

6              MR. SMALL:  In the conference, the Court

7  was concerned because I had not provided an address for

8  the medical provider wherein he was seeking costs.  Even

9  in his letter to me on January 30th, he was still

10  talking about addresses only.

11              Second of all, your Honor -- I know I

12  already bright-lined the fact that the discovery period

13  was over before they did anything, but I think that that

14  -- that they started late in many ways affects the

15  quality of what they're saying now and they didn't try.

16  They waited two years, and even the deposition that was

17  taken in October was four months late after the

18  deadline.

19              And, furthermore, he stopped the deposition

20  without me ever having an opportunity to inquire.

21  Meaning, that it's useful useless for purposes of this

22  trial because there was no opportunity to cross.

23              So, there have been a lot of problems in

24  this case.  I mean, I would say that I'm here, but the

25  government didn't really follow up on what they started.

1              THE COURT:  I don't really understand that.

2    I mean, if your client says, "It's none of your

3    business" when there is a question about damages, I

4    don't understand how you are foreclosed from asking

5    questions.

6              MR. SMALL:  Well, first, your Honor, that

7    she was there was a courtesy because --

8              THE COURT:  Well, there were lots of

9    extensions granted.

10             MR. SMALL:  I don't --

11             THE COURT:  It may be that -- I mean,

12   neither of the parties made a whole lot of discovery,

13   but the Court did grant extensions.  The Court did make

14   orders about what should be produced and it wasn't

15   produced.

16             MR. SMALL:  But -- your Honor, but you

17   never, as I understand it -- and I don't want to

18   quarrel, obviously.  I don't recall the Court making any

19   extensions on the scheduling conference.  The only --

20             THE COURT:  Well, all you had to do is look

21   at the docket sheet.

22             MR. SMALL:  But the docket sheet was

23   inappropriately prepared.  No one asked -- or no one

24   studied it to see that the scheduling order -- the

25   discovery time had already expired.  It had.

```
 1                    THE COURT:  But you can resurrect it.  I
 2      mean --
 3                    MR. SMALL:  By motion.
 4                    THE COURT:  -- the Judge resurrected it and
 5      there were requests for extensions and they were
 6      granted.
 7                    MR. SMALL:  Your Honor, the --
 8                    THE COURT:  I don't want to argue with you
 9      about it.
10                    MR. SMALL:  Yes, your Honor.
11                    THE COURT:  But certainly the docket sheet
12      reflects that there were a number of requests for
13      extension --
14                    MR. SMALL:  All after --
15                    THE COURT:  -- on 8/31/06, joint motion on
16      10/13/06.  You know, they were there.  They're there.
17                    MR. SMALL:  I didn't see those, your Honor,
18      and I never saw -- the rule says what I suggested.
19      Also --
20                    THE COURT:  I'm not going to dismiss the
21      case, but it does seem to me a sanction is appropriate,
22      and to the extent that the plaintiff refused to make
23      discovery concerning her psychiatric or psychological
24      damages, the defendant is entitled not to hear such
25      evidence because they had no way of preparing.  So, the
```

```
 1   sanction is not dismissal, but there will be no evidence

 2   of psychological damages.

 3              Now, you'll need to decide whether on under

 4   these circumstances you want to go ahead because I

 5   believe that that is the only element of damages

 6   claimed.

 7              I should also say that -- well, no, it's

 8   not necessary.

 9              That is the ruling of the Court on the

10   motion for sanctions, not dismissal, but no evidence of

11   psychological damages.  So --

12              MR. SMALL:  Your Honor --

13              THE COURT:  -- your objection is noted.  We

14   will -- I'll excuse this case briefly because I have to

15   talk to the second case, and you tell me whether you

16   want to go ahead or whether you want to appeal the

17   ruling.

18              MR. SMALL:  Your Honor, I'd like to make an

19   inquiry of the Court with respect to the Torres

20   distinction between psychological and mental damage as

21   compared to garden variety damages, emotional distress.

22   May I proceed on the other?

23              THE COURT:  No.  Emotional distress,

24   psychological damage, mental damage are, as far as I'm

25   concerned, all the same thing, and the defendant was
```

1    entitled to inquire about her having seen somebody with

2    a view to arguing that maybe whatever happened, happened

3    at a different time, had nothing to do with this case.

4    I mean, this is a relevant inquiry, and at the pretrial

5    conference, I told you they were entitled to the

6    information and --

7                    MR. SMALL:  I knew that, your Honor, and I

8    gave him the medical authorization that his --

9                    THE COURT:  Yes, but giving him medical

10   authorization without telling him who the providers are

11   isn't a whole lot of help.

12                   MR. SMALL:  But he said that -- he said --

13   okay, your Honor.  I won't argue with you, but, clearly,

14   that's what was stated.  Thank you.

15                   THE COURT:  All right.  Let me know when I

16   finish with the other case where this one is going and

17   then we'll proceed accordingly.  Thank you.

18                   MR. FARQUHAR:  Thank you, your Honor.

19                   (Recess taken.)

20                   THE COURT:  Mr. Small.

21                   MR. SMALL:  Yes, your Honor.

22                   THE COURT:  What is your decision?

23                   MR. SMALL:  Your Honor, I would like to

24   seek an appeal by permission.

25                   THE COURT:  All right.  I think, then -- I

1   understand what the plaintiff is saying, is that that

2   she does not wish to go ahead without the evidence that

3   I ruled out.

4            MR. SMALL:  Correct.

5            THE COURT:  Correct?

6            MR. SMALL:  Yes.

7            THE COURT:  And what that means is that we

8   will enter judgment for the defendant in the case and

9   then you can appeal that judgment for the defendant.  Is

10  that what you have in mind?

11           MR. SMALL:  No, your Honor.  I wanted to

12  preserve my rights to --

13           THE COURT:  Well, your rights are

14  preserved.

15           MR. SMALL:  I understand that, but -- I

16  mean, I want -- fine, your Honor, if that's the Court's

17  position.

18           THE COURT:  Well, I don't know how else to

19  do it.

20           MR. SMALL:  Well, I think that -- for the

21  record, that the Court's decision is not right, and I

22  would prefer -- or at least it was my impression that we

23  could seek a determination as to the -- whether or not

24  the Court is accurate prior to dismissal of the case.

25  However, if the Court is inclined to issue a judgment

```
 1   rather than allow Ms. Bell to appeal, with your
 2   permission -- which, of course, would get things done
 3   quicker, and it would also allow us to basically start
 4   right now and get our appeal basically in order,
 5   prepared and done.
 6             THE COURT: If I enter judgment based on
 7   your statement that you can't go forward without the
 8   evidence.
 9             MR. SMALL:  No, your Honor.  I said that I
10   do not wish to go forward without the evidence.
11   Obviously, I could try the case and then risk whatever
12   happens, but I think that I don't want -- or I don't
13   think it's fair to commence the trial on the merits
14   where I understand that there is such a gaping hole in
15   the case and I think that if this can be repaired at the
16   appellate level, fine, and if the Court is correct, then
17   this Court is -- then it will be done there, but I don't
18   want to carry the extra momentum or inertia, if you
19   will, of a judgment, particularly where --
20             THE COURT:  Well, I don't see how you can
21   appeal without a judgment, unless it's an interlocutory
22   appeal, and I don't think I'm inclined to certify an
23   interlocutory appeal, which, in any event, will take
24   longer than entering judgment and having --
25             MR. SMALL:  Will the Court then certify --
```

```
 1                    THE COURT:  I'm sorry?

 2                    MR. SMALL:  Fine, your Honor.  I was hoping

 3     that the Court would enter an order sufficient so that I

 4     could do the appeal by permission.

 5                    THE COURT:  I mean, you need a final

 6     judgment in order to appeal or you need a certification

 7     for an interlocutory appeal.  I don't know of any other

 8     way to do it.

 9                    MR. SMALL:  Yes.  And the Court is prepared

10     to do an opinion on it?

11                    THE COURT:  An opinion?

12                    MR. SMALL:  Yes.

13                    THE COURT:  No.  I've given you my opinion.

14     My opinion is that the plaintiff has failed to make

15     discovery as requested, as urged by the Court, as

16     ordered by the Court, and, therefore, she is not

17     entitled to put into evidence her mental distress

18     damages.

19                    MR. SMALL:  Which is tantamount -- I'm

20     sorry.  Were you done, your Honor?

21                    Which is tantamount to a dismissal.

22                    THE COURT:  Well, you may see it like that.

23     I don't.

24                    I note, also, that there is serious

25     question about the viability of the claim all together
```

1  because it is a sex discrimination claim.  I do not

2  understand, frankly, that sexual orientation is a

3  protected right under Title VII.  So --

4              MR. SMALL:  That's correct, your Honor,

5  but --

6              THE COURT:  -- I didn't order that earlier.

7  I don't order it now.  All I'm ordering now is that she

8  cannot, given the background and the failure to make

9  discovery, offer evidence of mental distress damages or

10  psychological damages or stress damages, all of which I

11  regard as the same, and I understand that you've decided

12  under these circumstances, you cannot go forward.

13              MR. SMALL:  May I have a further moment

14  with my client?

15              THE COURT:  Yes, but that's the last one.

16  I mean, we're going to have to fish or cut bait.

17              MR. SMALL:  Well, your Honor -- yes.

18              (Attorney Small confers with the

19                 plaintiff off the record.)

20              MR. SMALL:  My client desires to go

21  forward, your Honor.

22              THE COURT:  She's going to go forward with

23  the case?

24              MR. SMALL:  Yes.

25              THE COURT:  And what evidence do you have

1   of damages?

2                   MR. SMALL:  None, your Honor, just...

3                   MR. FARQUHAR:  Your Honor, can we see the

4   Court at sidebar, or something, and discuss one matter?

5                   If there are no damages whatsoever, your

6   Honor, I just can't see how this case is going forward.

7                   THE COURT:  I'll talk to you.

8   AT THE BENCH:

9                   MR. FARQUHAR:  Your Honor, I understand the

10  plaintiff might think she has the right to a jury trial,

11  but there are absolutely no damages left since the --

12  there are no damages with regard to loss of pay, as,

13  obviously, the evidence will show once we take this case

14  to trial, your Honor.  That being the case, there's no

15  damages with regard to emotional distress damages.

16                  The defendant was prepared to offer a

17  nominal amount for this case to move on its way and we

18  think at this point that the government's time in terms

19  of having to bring its witnesses and having to try this

20  case is not worth something if we have to go with a case

21  that has no damages.  So, that's what our concern is,

22  your Honor.

23                  THE COURT:  Have you made this known to

24  Mr. Small?

25                  MR. FARQUHAR:  We have, your Honor.  We

```
 1   have.
 2                   THE COURT:  And what's your client's
 3   position?
 4                   MR. SMALL:  My client doesn't want to agree
 5   to give up her case, your Honor, because it means a lot
 6   to her.  It's something that's very important.  I know
 7   that emotional distress damages are just compensatory.
 8                   THE COURT:  Well, that's the only claims,
 9   are claims --
10                   MR. SMALL:  I know.
11                   THE COURT:  Well, in that case -- I
12   understand that the plaintiff agrees she has no evidence
13   of -- she cannot offer evidence of emotional distress
14   damages given the -- let me start again.
15                   The Court ordered that emotional distress
16   damages are not to be heard because of the failure to do
17   discovery and the plaintiff has no other damages.
18   Therefore --
19                   MR. SMALL:  My client wants to be heard.
20   Could you wait -- and I ask the Court's permission,
21   please -- I'm sorry.  I'll step back a little further.
22                   THE COURT:  And, therefore, there is no
23   reason to go forward with a trial.  So, based on that, I
24   will enter judgment for the defendant.  If the Court of
25   Appeals says I'm wrong about that --
```

```
 1                    MR. SMALL:  They won't, I don't believe.

 2                    THE COURT:  But then the case gets sent

 3        back.

 4                    MR. SMALL:  I know, but the thing is, is

 5        that I think that the complaints of the government are

 6        well over-blown in terms of not being provided

 7        information, specifically given the fact that there was

 8        a prior case and that all the information -- I know.  I

 9        know.  I know.  But, on the other hand, we gave them all

10        that.  The Court saw the deposition wherein she named,

11        like, at least four current -- then current people.

12        Mr. -- the government has sent me various items of --

13        that relate to her discovery.  I think that here the

14        Court is using a hyper-technical, not -- excuse me for

15        saying, a hyper-technical approach to discovery to deny

16        my client a claim while using a less than stringent

17        standard in terms of what the government was required to

18        do in terms of producing the discovery.

19                    THE COURT:  I know you think that.

20                    MR. SMALL:  And it is --

21                    THE COURT:  You know, we've argued it --

22                    MR. SMALL:  I know.

23                    THE COURT:  -- already and I don't want to

24        argue it again.  I mean, you have said that, Mr. Small.

25                    MR. SMALL:  Well, let me just --
```

1          THE COURT:  I know it's your view.  And I

2    suspect it's your client's view.

3          MR. SMALL:  I would just say -- and I would

4    ask the Court to at least speak with my client at the

5    bench, but it's an abuse of discretion to take this

6    approach today on this particular case given its

7    history, given the totality of the circumstances, given

8    the government's less than --

9          MR. FARQUHAR:  Your Honor, might I just add

10   for the record, I take exception to what --

11         THE COURT:  I believe the government has

12   been prejudiced.  I told you they were entitled to

13   information.  The information didn't come.  There was a

14   motion to compel and that wasn't responded to.

15         MR. SMALL:  But you told me to give them

16   the address --

17         THE COURT:  No, I didn't.

18         MR. SMALL:  That's what I recall.

19         THE COURT:  I just told you to give the

20   information, but whatever.

21         MR. SMALL:  Yes.

22         THE COURT:  It didn't happen and here we

23   are.  So --

24         MR. SMALL:  Well, again, I appreciate the

25   Court's time and attention and I still think it's abuse

1    of discretion.  You don't want to say anything --

2                    MR. FARQUHAR:  It's for the Court of

3    Appeals to decide whether it's abuse of discretion.

4                    THE COURT:  So, because the plaintiff

5    agrees that she cannot go forward with any claim for

6    damages given the current state of the record, I will

7    enter judgment for the defendant and you, obviously,

8    have a right to appeal from that.

9                    MR. FARQUHAR:  Thank you, your Honor.

10                   THE COURT:  Okay.  Thank you.

11                   MR. SMALL:  Thank you very much.

12                   (End of bench conference.)

13                   MR. FARQUHAR:  I'm sorry, your Honor.  Are

14   we dismissed at this point?

15                   THE COURT:  Yes.  We will enter judgment as

16   I had said we would and then Mr. Small can appeal, and

17   that's where we are.

18                   MR. FARQUHAR:  Thank you, your Honor.

19                   THE COURT:  Thank you.

20                   (Adjourned, 10:46 a.m.)

21

22

23

24

25

```
 1                        CERTIFICATE

 2         I, Catherine A. Handel, Official Court Reporter

 3  of the United States District Court, do hereby certify

 4  that the foregoing transcript, from Page 1 to Page 28,

 5  constitutes to the best of my skill and ability a true and

 6  accurate transcription of my stenotype notes taken in the

 7  matter of Civil No. 05-11485-RWZ, Candy M. Bell vs. John

 8  E. Potter In His Official Capacity as the Postmaster

 9  General of the United States.

10

11
    May 13, 2008                    /s/Catherine A. Handel
12  Date                            Catherine A. Handel, RPR-CM

13

14

15

16

17

18

19

20

21

22

23

24

25
```